VALERIE A. BROWN, APPELLANT, V.
NEBRASKA PUBLIC POWER DISTRICT, A POLITICAL
SUBDIVISION OF THE STATE OF NEBRASKA;
LEXINGTON ALFALFA DEHYDRATORS, INC.,
A CORPORATION; AND LESLIE H. TURNER, APPELLEES.

306 N.W.2d 167

Filed May 29, 1981. No. 43464.

Stanley J. Bell and John A. Wagoner for appellant.

Kay & Kay for appellees.

Heard before KRIVOSHA, C.J., McCOWN, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

HASTINGS, J.

The appellant, Valerie A. Brown, appealed from an order of the District Court for Dawson County which sustained a motion for summary judgment against Brown and in favor of the appellee Nebraska Public Power District (NPPD). Brown assigns as error the sustaining of the motion for summary judgment and the overruling of her motion for a new trial. We reverse.

This is an action for damages for personal injuries sustained in an automobile-truck collision which occurred on June 19, 1974. Valerie Brown was driving her automobile from Lexington, Nebraska, to North Platte, Nebraska, via U.S. Highway 30 and Darr Road to Interstate 80. Her two minor children were passengers in the automobile. While driving south on Darr Road, she saw what she thought was dust blowing across the highway. She continued on, and when she drove into it she realized that it was smoke, not dust. After a short period, the smoke became dense and she decided to turn around and go back to Lexington. Brown turned west onto a graveled county road and attempted to make a U-turn back onto Darr Road to head north. Sometime during the U-turn the Brown car was struck broadside by a northbound truck hauling alfalfa, which truck was driven by defendant Leslie H. Turner.

Turner had been hauling hay since 6 a.m. that day, and had traveled Darr Road several times prior to the accident. He first noticed smoke just before 2 p.m. while traveling south on Darr Road. Turner saw three men and a pickup on the east side of Darr Road, and it appeared that they had just started burning out the ditch. Turner stated that the smoke did not amount to much, and his southbound lane was pretty clear. He proceeded south through the smoke and drove approximately 2 miles farther to a field where he picked up a load of hay and then began to return north on Darr Road to the mill.

While traveling north, Turner noticed that the smoke where Darr Road and the graveled county road intersected had become "real heavy." The smoke came from the east side of the road at the corner of the intersection and flowed west, straight across the road. The smoke covered both lanes as well as the intersecting county road. The evidence is not clear as to how fast the truck was traveling, other than testimony that it could not have been exceeding 55 miles per hour and

that Turner had his foot on the accelerator when entering the smoke. Once he entered the smoke, Turner said visibility was negligible and he did not see the Brown car until he was right upon it. The Brown car was facing east in the northbound lane and was struck broadside right in the center of the car. There were skid marks from both vehicles of slightly more than 100 feet from the intersection, straight north. Both children were killed, and Valerie Brown suffered severe and permanent injuries as a result of the collision.

The smoke was created by employees of NPPD who were burning the weeds in the borrow pit of defendant's right-of-way to prepare it for irrigation waters. The three employees had been sent out to burn the ditch, using a propane burner pulled by a tractor. Two of the men were responsible for the burning and one was responsible for fire control; the latter was equipped with a pickup carrying a supply of 100 gallons of water in a tank attached to a powered sprayer, and 50 or 100 feet of hose. According to Kenneth Kring, the man responsible for fire control, he considered his duties as being limited to keeping fire from spreading across the field, and that he was not responsible for the smoke or the hazards caused by the shift in the direction of the wind that might blow it across the highway. According to the employees, the fire was never out of control, although Kring did describe the wind as "Shifty, squirrely winds. Breezes." Kring's attention was focused on keeping the fire away from the fields, and the other two employees were operating the equipment to do the actual burning. None of them noticed the smoke blowing across the road.

Kring, who testified by means of his deposition, stated that he was told by Mr. Atterberry, the NPPD manager who assigned him to this job, "Make sure you don't get it across the road. This is — if you can anyway help it." He also said that he didn't make any effort

to determine the wind conditions because he wasn't around when they started the fire. Additionally, he had come upon the scene driving from the east to the west, and had driven through the smoke. He said it was drifting north, but he couldn't tell if it was drifting west. He did acknowledge that the fire had burned over to the west edge of the ditch, closer to Darr Road. He was asked whether he remembered seeing smoke moving westward across Darr Road, and he replied, "No, because I was on the east side of the ditch putting the fire out. . . . I could have cared less. I was interested in that fire right there."

Valerie Brown filed suit against both the driver of the truck, Leslie Turner, and NPPD for recovery of damages for personal injuries. Both defendants filed motions for summary judgment. The court overruled the motion by defendant Turner, but sustained the motion of NPPD. Plaintiff's motion for a new trial against defendant NPPD was overruled and this appeal was taken.

"The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact and where, under the facts, he is entitled to judgment as a matter of law. Upon a motion for summary judgment the court examines the evidence, not to decide any issue of fact, but to discover if any real issue of fact exists." *Pettis v. Lozier*, 205 Neb. 802, 806, 290 N.W.2d 215, 217 (1980). The primary purpose of the summary judgment statute is to pierce sham pleadings and to further dispose of cases where there is no genuine claim or defense. *Partridge v. Younghein*, 202 Neb. 756, 277 N.W.2d 100 (1979). The court should take the view of the evidence most favorable to the party against whom the motion is directed, and give to that party the benefit of all favorable inferences which may reasonably be drawn from the evidence. If reasonable persons might reach different conclusions, the motion should be denied and the case tried on its merits.

*Farro v. Rubottom*, 202 Neb. 120, 274 N.W.2d 149 (1979).

The position taken by NPPD is that even if all of the plaintiff's allegations are true, she has no genuine claim against NPPD; that there is no genuine issue of fact; and that reasonable minds could not conclude other than that the acts allegedly committed by NPPD constitute a mere "condition." A condition is not a proximate cause, and there would therefore be no basis for liability to the plaintiff. To support its argument, NPPD refers us to *Anderson v. Byrd*, 133 Neb. 483, 275 N.W. 825 (1937). *Anderson* involved an automobile collision which occurred when two cars were passing through smoke that had settled down over the highway. The smoke came from one or both locomotives that had been involved in a train wreck prior to the automobile collision. In that case, we held that the smoke was a condition and not a proximate cause of the accident, citing to authority which held that the activities of inanimate things are usually mere conditions and not causes. At first blush, *Anderson* would appear to be the same situation as the case at bar. However, after closer scrutiny it can be seen that the situations are very different.

"The rule adopted in this state is: '* * * when one engaged in the lawful use of the highway causes an obstruction to be placed upon it in such a manner as to be dangerous to traffic, he must use ordinary care to prevent injury to others where he knows that said obstruction is calculated to do injury to travelers upon said highway. The negligence in such a case consists of having placed an obstruction upon the street, and leaving it in such a manner as will be dangerous to others using the street.' Simonsen v. Thorin, 120 Neb. 684, 234 N.W. 628, 81 A.L.R. 1000.

"An obstruction, in the sense here used, includes anything which will interfere with the public's reasonable use of the highway easement." *Shupe v.*

*County of Antelope,* 157 Neb. 374, 377, 59 N.W.2d 710, 713 (1953).

Although this rule has normally been applied to articles which are solid and physically impede free movement of a vehicle on a highway, there is no reason why it should not be extended to cover inanimate objects or substances which are just as dangerous and obstructive. See *Hutchinson v. Fouts,* 349 F.2d 946 (8th Cir. 1965).

The situation created by burning weeds in the borrow pit is also cause for liability under the theory of the Restatement (Second) of Torts § 371 (1965): "A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place." The commentators use the following illustration: "A is burning brush on his farm, at a place one hundred feet from a public highway. A high wind blows smoke from the brush fire in a thick curtain across the highway, obstructing the view of passing motorists. Because their view is obstructed B and C, driving automobiles, collide in the smoke, although they are in the exercise of all reasonable care, and are injured. A is subject to liability to both B and C."

Following the Restatement is *Timmons v. Reed,* 569 P.2d 112, 124 (Wyo. 1977), which states: "The landowner in close proximity to a public highway must exercise reasonable care to avoid injury to the traveling public arising from unnecessarily-dangerous conditions created by him on the land, where the consequences of a failure to do so are reasonably foreseeable. [Citation omitted.] A violation of this duty constitutes negligence."

The rule was also followed in *Westerman v. Stout,* 232 Pa. Super. 195, 335 A.2d 741 (1975), which involved an automobile accident that was the apparent result

of a thick fog created by a cooling tower owned by United Aircraft. "United Aircraft cannot now argue that although they knew that fog was created, they had no notice that it would cover the turnpike and create a traffic hazard. United Aircraft must be charged with knowledge that once the fog was created, it could be blown onto the road surface. It was bound to anticipate the action of the wind and realize that the man-made fog could reach the roadway and cause visibility problems." *Westerman* at 201, 335 A.2d at 745.

For further authority, see, Annot., 150 A.L.R. 371 (1944); *Gulf Oil Corp. v. Turner*, 235 So. 2d 464 (Miss. 1970), and *Moore v. Plymouth*, 249 N.C. 423, 106 S.E.2d 695 (1959), and the cases cited therein.

Should a jury find that either Mr. Turner or Mrs. Brown was negligently operating his or her vehicle, such finding would not necessarily insulate any liability on the part of NPPD. "Generally, the effect of an intervening negligent act is tested by determining whether it was such as might reasonably have been foreseen as a consequence of the claimed negligence of the original actor. . . . The law does not require precision in foreseeing the exact hazard or consequence which happens. It is sufficient if what occurs is one of the kind of consequences which might reasonably be foreseen. The question whether negligence is, in view of the intervening negligence of a third person, such a continuing and substantial factor in producing an accident as to be a proximate cause of the injury, is a question of fact, rather than a question of law." *Libbey-Owens Ford Glass Co. v. L & M Paper Co.*, 189 Neb. 792, 801, 205 N.W.2d 523, 529 (1973).

Taking the view most favorable to Mrs. Brown, and giving to her the benefit of all favorable inferences which may reasonably be drawn from the evidence, we conclude that there are genuine issues of fact which should have been submitted to the jury. The facts presented could support a finding of negligence

on the part of NPPD if there is sufficient proof that NPPD, through its employees, placed an obstruction upon the highway which is known to be dangerous to travelers on the highway, and that NPPD had failed to use ordinary care to prevent injury to others. The question whether such negligence is a continuing and substantial factor in producing the accident so as to be a proximate cause of the injury is also a question of fact to be submitted to the jury. We conclude that it was error to sustain defendant NPPD's motion for summary judgment, and that the judgment should be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.