```
                              _____

                              No. 95-2640
                              _____
```

Sip-Top, Inc., a Minnesota          *
corporation,                        *
                                    *
            Appellant,              *
                                    *  Appeal from the United States
      v.                            *  District Court for the
                                    *  District of Minnesota.
Ekco Group, Inc., a Delaware        *
corporation; Ekco Housewares,       *
Inc., a Delaware corporation,       *
                                    *
            Appellees.              *

```
                              _____

        Submitted:  December 14, 1995

          Filed:  June 21, 1996
                              _____
```

Before McMILLIAN, and BEAM, Circuit Judges, and PERRY,[*] District Judge.
```
                              _____
```

BEAM, Circuit Judge.


Sip-Top, Inc. (Sip-Top) appeals the district court's[1] order entering judgment as a matter of law for Ekco Group, Inc. and Ekco Housewares, Inc. (collectively Ekco).  Because Sip-Top relies on unreasonable inferences and speculation in attempting to prove each of its various theories of recovery, we affirm.

---

        *The HONORABLE CATHERINE D. PERRY, United States District
        Judge for the Eastern District of Missouri, sitting by
        designation.

        [1]The Honorable Michael J. Davis, United States District Judge
for the District of Minnesota.

## I.    BACKGROUND

In 1989, Sip-Top began producing and marketing a consumer product, under the trademark name SIP-TOP, designed to hold a straw and fit over the top of a beverage can.  This product consisted of four components, namely a plastic lid, a straw, a plastic cap for the end of the straw, and a paper card used for packaging.  According to Sip-Top, it sold in excess of 3.5 million units of this product between 1989 and the time of trial in 1995. Sip-Top's customers included large retail stores, such as Target, K-Mart, and Osco Drug.  K-Mart purchased 1.8 million of the total units sold, making it Sip-Top's largest single customer.

In 1992, Ekco was negotiating with K-Mart over a kitchen tool and gadget planogram (a pegboard display of a variety of products) to be located in the housewares department of K-Mart stores.  Ekco intended to include a beverage top as one of the products in the planogram.  In the spring of the same year, Sip-Top contacted Ekco in an effort to obtain marketing assistance with its SIP-TOP product.  Shortly thereafter, Sip-Top and Ekco began discussing the possibility of Ekco acquiring Sip-Top.  To protect any confidential marketing and manufacturing information provided to Ekco during the course of the negotiations, Sip-Top required Ekco to sign a confidentiality agreement.  Ekco drafted an agreement, executed it and sent a copy to Sip-Top.

The Confidential Information Agreement (Confidentiality Agreement), entered into on May 29, 1992, provided that Ekco would not use or divulge any confidential information provided to it by Sip-Top, except to evaluate the desirability of acquiring Sip-Top.  The Confidentiality Agreement's prohibition against using or divulging confidential information did not apply to public information, information already known to Ekco, information obtained from a third party, or independently developed information.

In 1992, Ekco's Vice President of Operations, Ron Fox, visited Sip-Top representatives in Minnesota and toured the facilities of the companies that produced the SIP-TOP components. In addition to touring the manufacturing facilities, Sip-Top provided Fox with design, production, and marketing information. Fox also visited the site where the four components were combined and packaged. After this trip, no further negotiations took place until the fall of 1992. In the meantime, Ekco explored the possibility of other manufacturers providing the beverage top for its planogram. One of these companies, Maverick Ventures, Inc. (Maverick), had been manufacturing a can top called the "Soda Sipper." Maverick sent Ekco a letter, dated August 31, 1992, in which Maverick included its price list and attached a Sip-Top price list.

In the fall of 1992, Jeff Weinstein of Ekco called Jeff Dress of Sip-Top and offered to buy the entire Sip-Top company for $75,000. On the same day, K-Mart indicated to Sip-Top that it intended to purchase 425,000 SIP-TOP units. Later in the year, K-Mart indicated that it would order an additional 425,000 units, making its projected 1993 total over 800,000 units. Sip-Top rejected Ekco's offer, anticipating that it would make more than $75,000 in annual sales. No further discussions took place between Sip-Top and Ekco.

In late 1992, Ekco made an agreement with K-Mart to place a planogram in K-Mart stores throughout the country. In early 1993, Sip-Top contacted K-Mart to inquire about its product needs for 1993. The K-Mart buyer in charge of Sip-Top's account, Bill Tubbs, told Sip-Top that Ekco's housewares planogram included a product, the "Soda Sipper," similar to SIP-TOP. Ekco did not manufacture the "Soda Sipper." Rather, Ekco purchased the product from Maverick. K-Mart never actually placed the order for 425,000 units of SIP-TOP discussed in the fall of 1992, or any other order. Sip-Top ceased its business activities after losing the K-Mart account.

Sip-Top filed this lawsuit in federal court based on diversity jurisdiction, asserting six claims for relief: breach of the Confidentiality Agreement; interference with prospective business advantage; tortious interference with contract; unfair competition; misappropriation of trade secrets; and conversion. At trial, Sip-Top presented testimony, before a jury, for over three days. At the close of Sip-Top's case, Ekco moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The district court granted the motion and dismissed Sip-Top's complaint with prejudice. Sip-Top appeals, asserting that it presented enough evidence to get some of its claims to the jury. Sip-Top has not, however, appealed the dismissal of its trade secret and conversion claims.

## II. DISCUSSION

This case requires us to determine whether the district court erred in granting judgment as a matter of law to Ekco over Sip-Top's contention that it presented enough evidence for a jury to infer that Ekco acted improperly toward Sip-Top. We review a district court's grant of a judgment as a matter of law de novo and apply the same standards as the district court. Keenan v. Computer Assocs. Int'l, Inc., 13 F.3d 1266, 1268-69 (8th Cir. 1994). Judgment as a matter of law may be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1). Affirming a judgment as a matter of law "is appropriate where the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict." Caudill v. Farmland Indus., Inc., 919 F.2d 83, 86 (8th Cir. 1990). We view the evidence in the light most favorable to the nonmoving party. See, e.g., Larson v. Miller, 76 F.3d 1446, 1452 (8th Cir. 1996). In applying this standard we must:

> "(1) resolve direct factual conflicts in favor of the
> nonmovant, (2) assume as true all facts supporting the
> nonmovant which the evidence tended to prove, (3) give the
> nonmovant the benefit of all reasonable inferences, and (4)
> deny the motion if the evidence so viewed would allow
> reasonable jurors to differ as to the conclusions that could be
> drawn."

Pumps & Power Co. v. Southern States Indus., Inc., 787 F.2d 1252, 1258 (8th Cir. 1986) (quoting Jones v. Edwards, 770 F.2d 739, 740 (8th Cir. 1985)). Ultimately, "[a] motion for judgment as a matter of law presents a legal question to the district court and this court on review: `whether there is sufficient evidence to support a jury verdict.'" Keenan, 13 F.3d at 1268 (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)).

Sip-Top contends it presented sufficient evidence under this standard to permit each of its claims to be considered by the jury. Sip-Top asserts that the district court improperly resolved factual issues, weighed evidence, and construed all inferences against Sip-Top. We disagree. Although we must give Sip-Top the benefit of all reasonable inferences, we may not accord a party "the benefit of unreasonable inferences or those `at war with the undisputed facts.'" Marcoux v. Van Wyk, 572 F.2d 651, 653 (8th Cir. 1978) (quoting Schneider v. Chrysler Motors Corp., 401 F.2d 549, 555 (8th Cir. 1968), cert. dismissed by 439 U.S. 801 (1978)). A reasonable inference is one "which may be drawn from the evidence without resort to speculation." Hauser v. Equifax, Inc., 602 F.2d 811, 814 (8th Cir. 1979)); see also Caudill, 919 F.2d at 86. When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate. Pumps & Power Co., 787 F.2d at 1258. After analyzing each of Sip-Top's four causes of action, we conclude that Sip-Top failed to establish sufficient evidence to support a jury verdict and thus the district court did not err in granting Ekco judgment as a matter of law.

**A. Breach of Contract (Confidentiality Agreement)**

Turning first to Sip-Top's breach of contract claim, Sip-Top must prove the existence of a valid contract and that Ekco failed, without legal justification, to perform as obligated under the contract. See, e.g., Associated Cinemas of Am., Inc. v. World Amusement Co., 276 N.W. 7, 10 (Minn. 1937). We assume the validity of the Confidentiality Agreement and focus on whether Sip-Top presented evidence of a breach. The Confidentiality Agreement prohibits Ekco from divulging or using confidential information provided by Sip-Top. The Confidentiality Agreement does not apply to public information, information already known to Ekco, information obtained from a third party, or information independently developed. Therefore, to prove that Ekco breached the contract, Sip-Top must demonstrate that Ekco either used or divulged confidential information and that it was the type of information covered by the Confidentiality Agreement.

Sip-Top contends that Ekco used confidential information to evaluate Maverick, another manufacturer of a similar beverage cap. Sip-Top showed that Ekco received various information from Sip-Top regarding its product. Sip-Top also demonstrated that Ekco eventually purchased Maverick's product. Assuming that the information provided to Ekco by Sip-Top was confidential, we nevertheless conclude that Sip-Top failed to provide sufficient evidence to support a jury verdict that Ekco used, or divulged, any confidential information when it negotiated with Maverick. Sip-Top even concedes that it did not offer any direct evidence on how Ekco used or divulged confidential information. Rather, Sip-Top asserts that the jury should have been able to infer that in negotiating with Maverick, Ekco used or divulged confidential information provided by Sip-Top. This type of inference, however, is unreasonable and nothing more than mere speculation. And as such, it is insufficient to survive a motion for judgment as a matter of law.

In a case factually similar to the one before us, the Fifth Circuit reached the same result.  See Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1324 (5th Cir.) (concluding that the plaintiff company "simply failed to demonstrate that [the defendant company] misused the information it transferred pursuant to the non-disclosure agreement" and granting the plaintiff company judgment as a matter of law), cert. denied, 115 S. Ct. 71 (1994).  In both the Omnitech case and the present case, the contract did not prohibit the parties from negotiating, or entering into agreements, with other companies.  Thus, evidence of Ekco's interaction with Maverick does not tend to prove that Ekco breached the Confidentiality Agreement, unless the evidence shows that Ekco used or divulged confidential information provided by Sip-Top.  Moreover, the Confidentiality Agreement expressly authorized Ekco to use the information provided by Sip-Top to evaluate the desirability of acquiring Sip-Top.  Therefore, even if we assume Sip-Top's assertions are true, no inference arises that Ekco used or divulged confidential information.  The fact that the information provided by Sip-Top might have made Ekco more informed in evaluating whether to acquire Sip-Top or purchase Maverick's product does not support an inference that Ekco violated the Confidentiality Agreement.  See id. at 1327 (referring back to the court's conclusion that such use of confidential information also did not constitute misappropriation of a trade secret).

To accept Sip-Top's argument we would need to make the unreasonable inference that every time a company receives confidential information it uses that information if it negotiates with another entity.  As recognized in Omnitech, Sip-Top's position would lead to one of two equally unacceptable results:

> (i) every time a company entered into preliminary negotiations for a possible purchase of another company's assets in which the acquiring company was given limited access to the target's trade secrets, the acquiring party would effectively be precluded from evaluating other

> potential targets; or (ii) the acquiring company would, as a practical matter, be forced to make a purchase decision without the benefit of examination of the target company's most important assets--its trade secrets.

Id. at 1325. Thus, the district court properly disposed of Sip-Top's breach of contract claim by entering judgment as a matter of law for Ekco.

## B.    Interference with Prospective Business Relationship

Sip-Top next contends that Ekco interfered with Sip-Top's business relationship with K-Mart. To prevail on an interference with prospective business relationship claim under Minnesota law, Sip-Top must prove that Ekco intentionally committed a wrongful act that improperly interfered with Sip-Top's prospective business relationship with K-Mart. See, e.g., Hunt v. University of Minnesota, 465 N.W.2d 88, 95 (Minn. Ct. App. 1991) (citing United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982)).

Sip-Top did not submit any evidence by a K-Mart employee as to why K-Mart decided to cease its business relationship with Sip-Top. Although this failure would not alone be fatal to its claim, Sip-Top also failed to present evidence that Ekco acted wrongfully. Rather, Sip-Top admittedly relies, once again, solely on inference. Sip-Top presented evidence that it had a prior business relationship with K-Mart. Sip-Top employees testified that in the fall of 1992, K-Mart expressed its intention of purchasing additional SIP-TOP units. And it is undisputed that K-Mart in fact did not purchase any additional SIP-TOP units. Rather, K-Mart entered into an agreement with Ekco and Ekco purchased its beverage tops from another company, Maverick. Even assuming the veracity of all this evidence, and other evidence, Sip-Top failed to provide anything more than speculation as to how Ekco wrongfully interfered with Sip-Top's future business relationship with K-Mart. The evidence reflects that various companies were competing to sell

their own products but does not support an inference that Ekco <u>wrongfully</u> interfered with Sip-Top's business relationship with K-Mart. Nor does such evidence support an inference that Ekco's conduct <u>caused</u> Sip-Top to lose its K-Mart account. Therefore, this claim also fails as a matter of law.

###    C.    Tortious Interference with Contract

We next turn to Sip-Top's tortious interference with contract claim. Under Minnesota law, Sip-Top must prove the following five elements to prevail: (1) a contract existed between Sip-Top and K-Mart; (2) Ekco knew about the contract; (3) Ekco intentionally interfered with the contract; (4) Ekco's actions were not justified; and (5) Sip-Top suffered damages as a result. <u>See</u>, <u>e.g.</u>, <u>Furlev Sales & Assocs., Inc. v. North American Automotive Warehouse, Inc.</u>, 325 N.W.2d 20, 25 (Minn. 1982). Assuming that the testimony provided by Sip-Top's employees established that K-Mart made an oral commitment in the fall of 1992 to order a significant number of SIP-TOP units,[2] Sip-Top failed to provide any evidence that Ekco intentionally interfered with that contract. Sip-Top cannot rely on unreasonable inferences and speculation to establish the necessary evidentiary basis required to support a finding that Ekco intentionally interfered with Sip-Top's contract. <u>See</u> <u>City Nat'l Bank of Fort Smith v. Unique Structures, Inc.</u>, 929 F.2d 1308, 1315-16 (8th Cir. 1991) (upholding judgment as a matter of law when the plaintiff relied on inference to support the required proof of intent under Arkansas law). Moreover, the evidence does not support an inference that Ekco's actions caused Sip-Top to lose a contract with K-Mart. Thus, this claim also fails as a matter of law.

---

[2]We doubt that Sip-Top could establish the existence of an oral contract for over 400,000 units of SIP-TOP. As a matter of law, Sip-Top and K-Mart could not have a valid oral contract for a sale of goods worth over $500 dollars. Minn. Stat. § 336.2-201.

### D. Unfair Competition

Finally, we analyze Sip-Top's unfair competition claim, which is not an independent tort, but rather encompasses several causes of action that have been recognized in order to protect commercial interests. Rehabilitation Specialists, Inc. v. Koering, 404 N.W.2d 301, 305 (Minn. Ct. App. 1987).  Under Minnesota law, an unfair competition claim may be based on either:  (1) tortious interference with contract; or (2) improper use of a trade secret.  Id. at 305-06 (citing United Wild Rice, 313 N.W.2d at 632).  As discussed above, Sip-Top failed to provide the minimum amount of evidence required to send a tortious interference with contract claim to the jury and thus Sip-Top cannot base its unfair competition claim on that premise.  Moreover, improper use of a trade secret obviously would require Sip-Top to prove that Ekco used secret information without Sip-Top's consent.  See Minn. Stat. § 325C.01, subd. 3 (defining misappropriation of a trade secret as either:  (1) improper acquisition of a trade secret; or (2) disclosure or use of a trade secret without consent); Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897 (Minn. 1983).  Just as in its breach of contract claim, Sip-Top cannot rely on unreasonable inferences and speculation to establish a sufficient evidentiary basis for a reasonable jury to find that Ekco used a trade secret provided to it by Sip-Top.  See, e.g., Omnitech, 11 F.3d at 1325-26.  Therefore, Sip-Top's fourth and final claim fails as a matter of law.

## III. CONCLUSION

Sip-Top failed to provide evidence essential to its claims, relying instead on unreasonable inferences and mere speculation.  Accordingly, we affirm the district court's order granting Ekco's motion for judgment as a matter of law and dismissing Sip-Top's complaint with prejudice.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.