# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1151

_____

| | | |
|---|---|---|
| Joshua Hunt, a minor, by and through his Mother and next friend; Russell G. Hunt; Marla B. Hunt, | * * * * | |
| Plaintiffs/Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Lincoln County Memorial Hospital, | * * | |
| Defendant/Appellee, | * * | |
| Healthline Management, Inc.; Jane Doe; Mary Doe; John Doe; Linda Whiteside; Lisa Hanson, | * * * * | |
| Defendants, | * * | |
| Benjamin Mark Welch, Dr., | * * | |
| Defendant. | * | |

_____

Submitted: November 8, 2002

Filed: January 29, 2003

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Joshua Hunt ("Hunt") appeals the district court's[1] grant of judgment as a matter of law in favor of Lincoln County Memorial Hospital ("LCMH") and Dr. Benjamin Mark Welch ("Welch") on Hunt's Emergency Medical Treatment and Active Labor Act ("EMTALA") claim. We affirm.

## I.    BACKGROUND

When Hunt stepped on a nail in August 1998, he suffered a puncture wound to his right foot,[2] and his mother, Marla, took him to the LCMH emergency department. Two nurses on duty assisted Hunt and asked whether or not he had had a current tetanus shot. One of the nurses looked at Hunt's foot and then discussed the injury with the physician.[3] Welch then instructed Hunt to keep his foot elevated and the wound clean.

Later in the same month, Hunt's foot became swollen and sore. He was diagnosed at Cardinal Glennon Children's Hospital with osteomyelitis and cellulitis in his right foot, resulting from infections caused by the nail. Hunt now claims that these conditions would not have occurred had the staff at LCMH performed an appropriate medical screening examination and provided the necessary antibiotic treatment.

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

[2]According to the trial testimony of Hunt's father, Russell, the break in the skin from the nail was not "very big at all" and there was a very small amount of blood.

[3]There is some disagreement as to whether or not this physician was Welch. However, for purposes of this opinion, we will assume that it was.

## II.    DISCUSSION

"We review a district court's grant of a judgment as a matter of law de novo and apply the same standards as the district court." Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 830 (8th Cir. 1996). "'A motion for judgment as a matter of law should be granted when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.'" Neely v. Am. Family Mut. Ins. Co., 123 F.3d 1127, 1129 (8th Cir. 1997) (quoting Ehrhardt v. Penn Mut. Life Ins. Co., 21 F.3d 266, 269 (8th Cir. 1994) (citations and quotations omitted)). The  district court held that judgment as a matter of law was appropriate in this case because Hunt's cause of action did not satisfy the EMTALA.[4]  Hunt v. Lincoln County Mem'l Hosp.,  No. 4:00-CV-982, slip op. at 2 (E.D. Mo. Nov. 29, 2001).

Hunt claims that LCMH and Welch failed to provide him with an "appropriate medical screening examination," as required by the EMTALA.  The EMTALA sets forth the examination and treatment requirements for hospitals when dealing with patients with emergency medical conditions.[5]

---

[4]Citing section 176.20 of the fifth edition of Federal Jury Practice and Instructions, the district court stated that "[b]ecause plaintiffs have asserted a claim for violation of the [EMTALA], plaintiffs have to satisfy the following elements to support their claims against defendant Lincoln County Memorial Hospital: (1) defendant has both a Medicare provider agreement with the Secretary of Health and Human Services and an emergency room or emergency department; (2) plaintiff went to the defendant's emergency room or emergency department; (3) plaintiff requested examination or treatment; (4) plaintiff had an emergency medical condition; (5) defendant did not provide plaintiff with an appropriate medical screening examination; and (6) as a direct result of the conduct of defendant, plaintiff suffered personal harm." Hunt v. Lincoln County Mem'l Hosp.,  No. 4:00-CV-982, slip op. at 2 (E.D. Mo. Nov. 29, 2001).

[5]This law was enacted to address patient "dumping" by hospitals of patients without the appropriate amount of insurance.  Summers v. Baptist Med. Ctr.

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an *appropriate medical screening examination* within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a) (emphasis added).[6] This statute does not "create[] a general federal cause of action for medical malpractice in emergency rooms." Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1137 (8th Cir. 1996). "[The EMTALA] is not a substitute for state-law malpractice actions. It does not guarantee proper diagnosis or provide a federal remedy for medical negligence." Id. (construing Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139 (4th Cir. 1996)). Rather, the EMTALA focuses on uniform treatment of patients presented in hospital emergency departments. "An inappropriate screening examination is one that has a disparate impact on the plaintiff. Patients are entitled under EMTALA, not to correct or non-negligent treatment in all circumstances, but to be treated as other similarly situated patients are treated, within the hospital's capabilities." Summers, 91 F.3d at 1138.

---

Arkadelphia, 91 F.3d 1132, 1136-37 (8th Cir. 1996) (discussing the legislative history of the EMTALA).

[6]Subsection (e)(1) of 42 U.S.C. § 1395dd provides that an "emergency medical condition" means "(A) a medical condition manifesting itself by acute symptoms of sufficient severity . . . such that the absence of immediate medical attention could reasonably be expected to result in . . . (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A)(i) - (iii).

Essentially, Hunt's claim is not that he received non-uniform treatment, but that he received incorrect treatment. Based on the injury to his foot and the status of his immunizations, the staff at LCMH gave Hunt instructions for caring for his injury, and this treatment was "appropriate" for EMTALA purposes. "The emergency-room physician is required by EMTALA to screen and treat the patient for those conditions the physician perceives the patient to have." Id. at 1139. While Hunt may or may not have a state law medical malpractice claim, he does not have a valid federal EMTALA claim against LCMH or Welch.

## III. CONCLUSION

We affirm the district court's grant of judgment as a matter of law in favor of LCMH and Welch on Hunt's EMTALA claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.