# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-4013

_____

| | | |
|---|---|---|
| Carroll E. Heatherly, as Independent | * | |
| Administrator of the Estate of | * | |
| Margaret M. Heatherly, deceased; | * | |
| Carroll E. Heatherly, individually, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| Thomas C. Heatherly, individually; | * | Appeal from the United States |
| Margaret C. Heatherly, individually; | * | District Court for the District |
| Bridget C. Heatherly, individually; | * | of Nebraska. |
| Patrick B. Heatherly, individually, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| Steven Alexander; | * | |
| Black Creek Transport, Inc., | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Midwest Specialized Transportation; | * | |
| David Gilbertson, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: November 17, 2004
Filed: August 26, 2005

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

On the afternoon of June 26, 1999, Carroll Heatherly, his wife Margaret Heatherly, and their four children Thomas, Brigid, Meg, and Patrick, embarked in a motor home on a vacation trip to Yellowstone National Park from their home in Lisle, Illinois. Tragically, the trip ended in Nebraska with the death of Margaret, and serious injury to Carroll. This personal injury and wrongful death litigation ensued.

Heatherly, individually and in his capacity as independent administrator of the estate of his deceased wife, appeals the district court's grant of judgment as a matter of law (JML) to defendants Midwest Specialized Transportation (MST) and its employee David Gilbertson. We reverse and remand for a new trial.

## I. BACKGROUND

We recount the facts of this case in the light most favorable to Heatherly, the non-moving party. Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 830 (8th Cir. 1996).

On June 26, 1999, David Gilbertson, a professional truck driver working for MST of Rochester, Minnesota, who had nine years of trucking experience, was hauling a load of paper from Minnesota to California in his tractor-trailer unit. Around 1:15 a.m. June 27, he became tired and decided to pull off Interstate 80 to sleep at the Phillips rest area located at mile marker 317. Gilbertson parked his truck on the shoulder (or emergency lane) of the deceleration portion of the exit ramp[1]

_____

[1]A deceleration lane on a freeway is the initial portion of an exit ramp, designed to handle traffic entering the ramp at highway speeds and to provide space

leading into the rest area. He and his son Dennis, who was riding with him, went to sleep in the tractor's sleeper bunks. At around 2:30 a.m., the Heatherlys' motor home approached mile marker 317 from the east. They were towing a Ford Escort. Another tractor-trailer rig, stolen and being driven by Steven Alexander, was coming up behind the motor home at a speed of nearly ninety miles-per-hour. A series of four collisions ensued. First, Alexander's truck struck the back of the towed Escort. This propelled the Escort forward, striking the back of the motor home. The Escort rotated and was briefly sandwiched between the motor home and Alexander's truck before Alexander's truck ran over the top of the Escort. The third impact involved Alexander's truck striking the back of the motor home. This forced the motor home, still traveling at some sixty-seven miles-per-hour, head-long into the back of the parked MST truck, the fourth and final impact. Alexander's truck proceeded, unimpeded, across the deceleration lane, and across the shoulder of the lane. It came to rest in the grassy ditch next to the shoulder of the lane. The motor home and MST truck trailer were soon engulfed in flames. All four of the Heatherly children and Carroll Heatherly were rescued, though Carroll Heatherly was badly injured. Margaret Heatherly was killed in the collision. Doctors had to amputate Carroll Heatherly's right leg below the knee.

Heatherly commenced this diversity action in the United States District Court for the District of Nebraska. Before trial, Alexander and Black Creek Transport, Inc.[2] were dismissed as defendants, leaving defendants Gilbertson and MST. At the close

for deceleration to the appropriate speed once off the freeway. Gilbertson's truck was parked very close to the traveled portion of Interstate 80 near the beginning of the deceleration lane.

[2]Black Creek Transport, Inc. had originally been sued because of an alleged interest in the truck that Alexander was driving. But the company contended that though it had at one time leased the tractor that Alexander drove, it had returned it to the lessor over a year prior to the accident and had no interest in the tractor at the time of the accident. The parties stipulated to the company's dismissal from the case.

of the evidence, defendants moved for JML pursuant to Rule 50 of the Federal Rules of Civil Procedure. Taking the motion under advisement, the district court submitted the case to the jury. After the jury deadlocked, the district court declared a mistrial, granted defendants' JML motion and then dismissed the case. The district court concluded, as a matter of law, that Gilbertson's conduct in parking the MST truck where he did on the exit ramp was not a proximate cause of the Heatherlys' injuries, but merely created a condition by which those injuries were made possible through the negligence of Alexander. Heatherly appeals.

## II.    DISCUSSION

The question before us is whether it was error to grant JML to defendants on this issue of proximate cause. "In a diversity action for negligence, we apply the law of the forum state," Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002), in this case, Nebraska. Heatherly contends that, in granting JML to defendants, the district court misapplied Nebraska law regarding proximate cause and failed to consider the evidence in the light most favorable to Heatherly, the non-moving party. We review a district court's grant of JML de novo and apply the same standards as the district court. Sip-Top, 86 F.3d at 830. A motion for JML is properly granted where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party" on that issue. Id. (quotation omitted); Fed. R. Civ. P. 50. Judgment as a matter of law "is appropriate where the evidence is such that . . . there can be but one reasonable conclusion as to the verdict." Sip-Top, 86 F.3d at 830 (quotation omitted).

Thus, this case requires us to undertake a de novo review of the law of proximate cause in Nebraska and its application by the court in this particular case. Proximate cause analysis invariably involves complex issues of tort law in general, and this case is no exception.

### A. Foreseeability: The Crux of Nebraska Proximate Cause Law

Under Nebraska negligence law, proximate cause consists of three elements: that (1) but for the negligence, the injury would not have occurred, (2) the injury is the natural and probable result of the negligence, and (3) there is no efficient intervening cause.[3] Shelton v. Bd. of Regents of the Univ. of Neb., 320 N.W.2d 748, 752 (Neb. 1982). The *foreseeability* of an injury that results from a negligent act determines whether that injury is the "natural and probable result" of the act. "To constitute proximate cause . . . the injury must be the natural and probable result of the negligence, and be of such a character as an ordinarily prudent person *could have known*, or would or ought to have *foreseen* might probably occur as the result." Steenbock v. Omaha Country Club, 195 N.W. 117, 118 (Neb. 1923) (emphasis added). "The law does not require precision in foreseeing the exact hazard or consequence which happens. It is sufficient if what occurs is one of the kind of consequences which might reasonably be foreseen." Brown v. Neb. Pub. Power Dist., 306 N.W.2d 167, 171 (Neb. 1981) (quotation omitted). Further, "[a] proximate cause is a cause that produces a result in a natural and continuous sequence, unaccompanied by an efficient intervening cause, and without which the result would not have occurred." Tapp v. Blackmore Ranch, Inc., 575 N.W.2d 341, 348 (Neb. 1998). An efficient intervening cause

> is a new and independent act, itself a proximate cause of a result, which breaks the causal connection between the original wrong and the result. A person is not legally responsible for a result if it would not have

---

[3]While the Nebraska Supreme Court, in Sacco v. Carothers, 567 N.W.2d 299 (Neb. 1997), instructed Nebraska courts to discontinue *separately* instructing juries about efficient intervening causes, it did not remove the notion from proximate cause doctrine in Nebraska. The court, in fact, reaffirmed that "the question of efficient intervening causation is, in essence, one of proximate causation. The concepts of negligence and proximate cause are sufficient to encompass notions of efficient intervening causation without the [separate instruction]." Id. at 306.

resulted but for the interposition of an efficient intervening cause, which he should not have *reasonably anticipated* or *reasonably foreseen*.

Id. (emphasis added).

Causation is "ordinarily a question for the trier of fact." Id. See King v. Crowell Mem'l Home, 622 N.W.2d 588, 594 (Neb. 2001); Sharkey v. Bd. of Regents of the Univ. of Neb., 615 N.W.2d 889, 900 (Neb. 2000) ("[I]n the proximate cause context . . . foreseeability is a question of fact for the finder of fact."); Knoll v. Bd. of Regents of the Univ. of Neb., 601 N.W.2d 757, 763 (Neb. 1999) (same); Kozicki v. Dragon, 583 N.W.2d 336, 340 (Neb. 1998) ("Determination of causation is ordinarily a matter for the trier of fact."). Only where the evidence is such that "only one inference can be drawn" is it "for the court to decide whether a given act or series of acts is the proximate cause of the injury." Tapp, 575 N.W.2d at 348. See Tess v. Lawyers Title Ins. Corp., 557 N.W.2d 696, 706 (Neb. 1997) ("The issue of proximate cause, in the face of *conflicting evidence*, is ordinarily a question for the trier of fact."). The determination of causation is for the trier of fact because of the unique role foreseeability plays in causation. In Kozicki, the Nebraska Supreme Court cited Hill v. Yaskin, 380 A.2d 1107 (N.J. 1977), in holding that the role of foreseeability as it applies to determinations of duty and causation presents "two separate issues," a point upon which we elaborate below. 583 N.W.2d at 339.

In the instant case, it is difficult to tell the extent to which the role of foreseeability was considered in the analysis of proximate cause. This leaves us with two concerns. First, the question of causation was decided as a matter of law, when it is generally a matter of fact under Nebraska law. Second, though the district court relied on relevant precedent, our analysis of Nebraska proximate cause law dictates a different outcome. As an initial matter, proximate cause appears to have been analyzed from the standpoint that "'X' is a condition, therefore 'X' is not a cause." Instead, we think the question should have been "Is 'X' a proximate cause?" and if it

is not, then "X" may be merely a condition. This latter approach follows the weight of Nebraska law which makes foreseeability the axis around which the cause-condition analysis rotates. It also makes more sense of the difficult inquiry involved in distinguishing cause from condition. This is so because it makes the finding of a condition the product of the proximate cause analysis.

Finally, though Alexander's negligence was determined to have been an intervening cause of the collision, which it was, we believe an analysis of the foreseeability of that negligence acting in concert with the parked MST truck should have been a more prominent factor in the overall analysis. The question of whether an act is a proximate cause, or simply a non-actionable condition, is determined by whether it was foreseeable that the initial act could join with the intervening act to cause the alleged injuries.

### 1. Causation a Matter for the Trier of Fact

As earlier noted, under Nebraska law, causation is generally a determination for the trier of fact because of the function foreseeability plays in the analysis. When legal duty is the issue, foreseeability is also a necessary element but it shoulders a different burden. Indeed, the Nebraska Supreme Court has specifically recognized the confusion caused by these differing roles. "[T]he distinction between foreseeability as it applies to duty and as it applies to proximate cause is a critical distinction that is too often and too easily overlooked." Sharkey, 615 N.W.2d at 900. See Knoll, 601 N.W.2d at 763; Kozicki, 583 N.W.2d at 339 ("The district court did not make a distinction between the application of foreseeability to determining duty and the role foreseeability plays in determining proximate cause. However, duty and proximate cause are two separate issues."). In Yaskin, upon which the Nebraska Supreme Court relied in Kozicki, the court explained that foreseeability in terms of causation "relate[s] to the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff was a reasonably

foreseeable result so as to constitute a proximate cause of the injury." 380 A.2d at 1109.

> Foreseeability that affects proximate cause . . . relates to the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff reasonably flowed from defendant's breach of duty . . . . Foreseeability in the proximate cause context relates to remoteness rather than the existence of a duty.

Knoll, 601 N.W.2d at 763 (second alteration in original) (quotation omitted).

By contrast, the Nebraska Supreme Court has held that "foreseeability, in the *duty* context, is a legal question for the court." Id. (emphasis added). "'[Duty] is entirely a question of law . . . and it must be determined *only* by the court. *It is no part of the province of a jury to decide . . . whether the Long Island Railroad is required to protect Mrs. Palsgraf from fireworks explosions*.'" Id. (alterations in original) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37 at 236 (5th ed. 1984)).[4] That is because

> [f]oreseeability as it impacts duty determinations refers to the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care.

Id. (quotations omitted). In Knoll, the Nebraska Supreme Court specifically overruled some of its earlier cases that, in the court's view, had tended to confuse the

---

[4]Referring to the classic debate between Judge Cardozo and Judge Andrews in Palsgraf v. Long Island R.R. Co., 162 N.E. 99 (N.Y. 1928), over the extent of and distinction between duty and causation.

role of foreseeability by stating that foreseeability as to duty and causation were both for the trier of fact. Id. at 762-63. In the process of overruling those cases, the court clearly stated that duty is a question of law, while causation is a question of fact. Id.[5]

By deciding the question of causation as a matter of law after the jury deadlocked, a jury was not allowed–in this case, a future jury, after declaration of the mistrial–to consider the evidence presented and determine from it whether the Heatherlys' injuries reasonably flowed, at least in part, from Gilbertson's negligent parking of the MST truck on the shoulder of the exit ramp. That is, the jury was not allowed to perform its duty of calibrating the limits of liability flowing from an established duty and breach thereof with regard to the collision between the motor home and the negligently parked MST truck. Unless there was insufficient evidence for a jury to determine causation, or the evidence was such that a reasonable jury could draw but one inference about the foreseeability of the resulting accident, JML was not appropriate.

We believe that there was sufficient evidence to create a jury question regarding causation. Given the evidence in the record, we cannot say that it would be unreasonable for a jury to determine that it was foreseeable that the parking of the MST truck on the shoulder of the exit ramp could result in a collision and injuries of the type suffered by the Heatherlys.

Michael Williams testified as an expert for the plaintiffs, basing his opinions on his experience as an over-the-road truck driver with approximately forty-four years of work in the trucking industry. At various times, he worked as a driver, corporate safety director, general fleet manager, truck driver trainer, Federal Motor Carrier

---

[5]The parties do not contest that the MST truck was negligently parked, and that the district court based its ruling on the issue of proximate cause. Thus, we need not concern ourselves with an analysis of foreseeability in the duty context. We mention the differing treatment only to show the contrast.

Safety Regulations compliance consultant, and truck driver training program developer. Williams testified that, in his opinion, (1) Gilbertson had parked in an unsafe location, (2) truck drivers are trained not to park adjacent to a deceleration lane because of the risk of collision with high-speed traffic exiting a freeway, and (3) truck drivers should park at truck stops away from traffic.

Nebraska State Patrol Trooper Ross Lyon, a fourteen-year veteran with expertise in accident reconstruction testified that (1) most high-speed traffic on the freeway travels in the right-hand lane, the one adjacent to the deceleration lane and shoulder where the MST truck was parked, (2) the MST truck was not at all parked within the confines of the rest area, (3) the shoulder of deceleration lane where the MST truck was parked was not designed for truck drivers to stop for rest, and (4) the MST truck was illegally parked in an unsafe location, creating a hazard. Nebraska State Patrol Trooper Darwin Daily, a sixteen-year veteran who became an accident reconstruction specialist in 1989, testified that at the time of the accident, a "No Parking" sign was posted on the shoulder of the exit ramp to the rest area. Gilbertson himself testified that parking within the rest area or at a truck stop would have been safer alternatives to parking the MST truck on the shoulder of the exit ramp.

Stephen Fenton, an engineer who specializes in accident reconstruction using photogrammetry (the science of gathering dimensions from photographs), testified that had the MST truck not been parked where it was that night, the Heatherlys' motor home, instead of colliding with the MST truck, would have followed a parallel path to that of the Alexander truck and would have ended up in the grassy area beyond the shoulder of the deceleration lane. It was the impact between the motor home, traveling at the time at an estimated sixty-seven miles-per-hour, and the parked MST truck, that Fenton likened to "hit[ting] . . . a brick wall." That impact surpassed, by some twenty-seven miles-per-hour, the forty mile-per-hour difference in velocity at which point collisions are denoted "extreme," according to Fenton. Fenton testified that, by contrast, the impact between the truck driven by Alexander and the motor

home was "very minor" given that their speeds at the time of impact differed by only six miles-per-hour. Several aerial and close-range photographs of the accident scene, as well as diagrams of how the accident occurred, show that the MST truck was parked very close to the high-speed traffic lanes of the interstate highway before and during the accident. This, along with other evidence we find unnecessary to recount, was sufficient to create a jury question about the issue of foreseeability and, thus, causation.

### 2. Finding of Condition Derives From Analysis of Foreseeability in Proximate Cause Context

The district court relied primarily on Steenbock and Knuth v. Singer, 116 N.W.2d 291 (Neb. 1962), for its conclusion that Gilbertson's parking of the MST truck on the exit ramp merely created a condition for, and therefore was not a cause of, the fatal collision. However, the cause-condition analysis, in light of more recent precedent, reveals that a finding of a condition *derives from*, and does not *determine*, proximate cause. A finding of proximate cause emerges from an analysis of the foreseeability that the injury could arise from the negligent act. In fact, the decision in Steenbock rests on the matter of foreseeability. In Steenbock, an Omaha Country Club employee had placed a flagpole across a club driveway for repair. A car negligently drove on the driveway in such a fashion that it struck the flagpole and propelled one end of it "with great violence" into the back of the plaintiff sitting nearby, causing unspecified injuries. 195 N.W. at 118. In holding that it was the negligent driving, and not any assumed negligent placement of the flagpole, that was the proximate cause of the employee's injuries, the Nebraska Supreme Court explained that a proximate cause must "be of such a character as an ordinarily prudent person could have known, or would or ought to have foreseen might probably occur as the result." Id. The court continued:

It is not sufficient that the negligence charged does nothing more than furnish a condition by which the injury is made possible, and if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury.

Id.

The results in Steenbock were such that it could not be said that they were the foreseeable consequence of the country club employee's placement of the flagpole across the driveway for repair. That is, the injuries were not such that "an ordinarily prudent person *could have known*, or would or ought to have *foreseen*" that they might result from placing the flagpole across the driveway. Id. (emphasis added). While it might be foreseeable that placing a flagpole across a driveway could create a hazard to cars (or their passengers) which might hit it or try to avoid it, or to pedestrians, who might trip over it, it is much less foreseeable that someone sitting near the driveway would be injured by the movement of a flagpole placed across it. Thus, the court first rejected the placing of the pole as a proximate cause, because of the unforeseeability of the injury, and then concluded that the pole "simply furnished a condition" for the accident. Id. In the present case, the district court did not mention that it considered the foreseeability of the Heatherlys' injuries being caused by the negligently parked MST truck, and apparently did not analyze causation in that context. It instead determined that the parking of the truck was a condition, and thus not a cause, seemingly inverting the analysis.

The district court also relied upon Singer, where plaintiff was a passenger in a car (for clarity, "plaintiff's car") that came upon the scene of a collision. Three cars had been proceeding in the lane ahead of plaintiff's car. The first of these cars, wanting to make a left turn, had stopped for oncoming traffic. The second car stopped behind the first. The third car did not stop and struck the second car, causing the third car to block a portion of the highway. Plaintiff's car then struck the third car,

-12-

causing plaintiff's injuries. Plaintiff sued the driver of the third car. The Nebraska Supreme Court held that the position of the third car was but a condition that made the accident possible, and that the negligence of the driver of plaintiff's car in failing to keep a proper lookout was the efficient intervening cause of plaintiff's damages.

Singer is also distinguishable. Indeed, rather than turning on foreseeability, Singer turns on a more fundamental failure of proximate causation that is not at issue in this case–failure of the "but-for" element under Nebraska law. It appears that the Singer court held that the second collision was not at all caused by the first. The evidence showed that had the third automobile not been negligently operated, but instead had come to a safe stop behind the second vehicle, plaintiff's car would still have collided with it as a result of plaintiff's car being driven negligently. Since plaintiff would have been injured regardless of the actions or position of the third automobile, the court held that the third automobile was but a condition, and not a cause, of the accident. The intervening negligent driving of plaintiff's car was the sole cause of plaintiff's injuries.

### 3. Continuing Negligence, Intervening Causes, and the Role of Foreseeability

Moreover, other Nebraska cases seemingly more on-point with the instant case indicate that parking and maintaining the MST truck on the shoulder of the exit ramp may have constituted *continuing negligence* that was a cause of the accident, and not merely a condition.

In Johnson v. Metropolitan Utilities District, 125 N.W.2d 708 (Neb. 1964), plaintiff was injured when the car in which she was riding collided with a front-end loader tractor that defendants had parked off the side of a street, but left protruding into the street some two feet. Defendants argued that the parked tractor "was at most a condition and not a proximate cause of the injuries to the plaintiff." Id. at 710.

-13-

They cited Singer, stating that an obstruction on a highway is a condition and not a proximate cause of any subsequent injuries. The court, however, noted that the difference between a mere condition that makes an intervening cause possible, and continuing negligence that *is* a proximate cause, is the foreseeability of that intervention:

> [T]he doer of an original wrongful act that should reasonably cause one to *anticipate* an injury therefrom is not relieved from liability for an injury immediately brought about by an intervening cause . . . that is set into operation by such original wrongful act, and that alone would not have caused the injury, but which with the aid of the original wrong does cause such injury.

Id. at 711 (emphasis added). See Brown, 306 N.W.2d at 171 (reversing summary judgment for power district that had started fire to burn weeds, the smoke from which caused a fatal accident on adjacent highway, stating that an intervening cause, if foreseeable, does not relieve original actor of liability, and that "[t]he question whether such negligence is a continuing and substantial factor in producing the accident so as to be a proximate cause of the injury is . . . a question of fact . . . [for] the jury"); Drawbridge v. Douglas County, 311 N.W.2d 898 (Neb. 1981) (holding that failure to warn of car blocking highway was continuing negligence and not a condition); Looney v. Pickering, 439 N.W.2d 467, 471 (Neb. 1989) (reversing directed verdict for defendant who had parked truck and trailer in the curb lane of busy Omaha street and where plaintiff negligently drove and collided with back of truck, stating that "foreseeability is an important determinant of whether the defendants are relieved of liability for their own negligence by the intervening negligence of another" because plaintiff's negligence was not foreseeable by the defendants, and concluding that "[w]e cannot make that finding as a matter of law"). The Johnson court also emphasized that the jury has a unique responsibility to make the foreseeability determination when it said that where "the original negligence is of a character which, *according to the usual experience of mankind*, is liable to invite

-14-

or induce the intervention of some subsequent cause, the intervening cause will not excuse it, and the subsequent mischief will be held to be the result of the original negligence." 125 N.W.2d at 711 (emphasis added). In Johnson, the court concluded that the failure of the defendants to warn motorists of the parked tractor constituted "continuing negligence as distinguished from a condition." Id. "[A]nd if reasonable minds could conclude from the evidence that such negligence proximately caused an accident, then the issue should be submitted to a jury for its determination." Id. In dismissing the applicability of Singer and the condition analysis, the court stated:

> There is . . . a group of cases in which this court has held that where a party creates an obstruction upon a highway and fails to use due care to warn others of its danger, his negligence may be a proximate cause of the injuries to another. . . . In these cases, it was held that it is a question for the jury as to whether the original negligence was a proximate cause of the injuries.

Id. In the present case, though the MST truck did not obstruct one of the driving lanes, it did obstruct an emergency lane intended only for emergency stopping.[6] And while warnings of the truck's location may have made little or no difference in this instance, it is for a jury to decide whether a collision, regardless of the exact

---

[6]Nebraska Revised Statute § 60-6,164(2) provides:

No person shall stop, park, or leave standing any vehicle on a freeway except in areas designated . . . except that when a vehicle is disabled or inoperable or the driver of the vehicle is ill or incapacitated, such vehicle shall be permitted to park, stop, or stand on the shoulder facing in the direction of travel with all wheels and projecting parts of such vehicle completely clear of the traveled lanes, but in no event shall such parking, standing, or stopping upon the shoulder of a freeway exceed twelve hours.

circumstances, was reasonably foreseeable as a result of the MST truck being parked so close to such high-speed traffic.

Finally, the Nebraska Supreme Court indicated in <u>Delaware v. Valls</u>, 409 N.W.2d 621 (Neb. 1987), that use of the cause-condition distinction may be falling out of favor in Nebraska, and instead discussed causation in that case in terms of active preexisting negligence. In <u>Valls</u>, plaintiff was injured as a passenger on a dirt bike that collided with a car in an intersection. She sued the owners of property on the corner of the intersection for failing to maintain vegetation and for parking a truck near the intersection that made it difficult to see approaching traffic. The trial court granted summary judgment in favor of the property owners, concluding their negligence merely created a condition, and did not cause the accident. The Nebraska Supreme Court recognized a number of cases that had applied the condition analysis, but noted that

> situations involving passive preexisting negligence have been distinguished from those situations in which active preexisting negligence combines with subsequent independent acts of negligence to cause injury. In the latter situations the preexisting and subsequent negligence have been held to combine and become concurrent acts of negligence such that each may be a proximate cause of the resulting injury.

<u>Id.</u> at 623. The court pointed to cases like <u>Brown</u> and <u>Johnson</u> as examples. Notably, the court recognized some merit in an argument that the cause-condition analysis should be abandoned as "meaningless" in the sense that it "provid[es] no more guidance than calling something blamable or not blamable," and that it had been "almost entirely discredited."[7] <u>Id.</u> at 623-24 (quotations omitted). Nevertheless, the

---

[7]In fact, the current edition of the Nebraska Jury Instructions states that "[d]iscussion of conditions versus causes is discouraged." 1 Nebraska Jury Instructions § 3.43 Comment IV (2d ed. 2004). That is because many of the cases

-16-

court avoided reexamining the distinction, deciding the case instead as a matter of intervening cause. It upheld the grant of summary judgment because, unlike the instant case, the evidence in Valls was not in conflict and reasonably pointed only to the conclusion that the defendants could not have foreseen that the plaintiff would negligently enter an intersection when the view was not clear. Id. at 624.

Under the facts, the present litigation is, in our analysis, better viewed in light of cases about continuing negligence and the foreseeability of an intervening cause rather than in light of, in particular, Singer. And Valls, in conjunction with language from the Nebraska Jury Instructions, teaches us to proceed with caution in making the cause-condition distinction in the first place.

--------------------------------------

making a distinction between cause and condition "are merely saying that the so-called condition was not a *proximate cause* of the injury." Id. (emphasis added). The instructions also note cases involving two acts that concur to cause injury where the first act merely provides the circumstance necessary for the second to bring about the injury.

> Some of these cases speak in terms of whether the first act was a cause or a condition. But these cases, too, really turn upon whether the first act was "a" proximate cause or the second act, "the" sole proximate cause. *Talk of conditions versus causes is really incidental to analysis of proximate and superseding cause. . . .* To the extent that [discussion of conditions versus causes] confuses the real issues, it should be avoided. *In any event, recognizing that the real issue is proximate, superseding cause, or both, can minimize the difficulties encountered with many of these cases*.

Id. at § 3.42 Comment (emphasis added) (citations omitted).

-17-

## III.  CONCLUSION

Because the question of causation was a matter for the jury to decide in this case, we reverse and remand for a new trial.

_____