275 Neb. 944
MARY KAY DAVIS, APPELLANT,
v.
HENRY A. DAVIS, APPELLEE.
No. S-07-529.
Supreme Court of Nebraska.
Filed June 20, 2008.
William G. Dittrick and Kirk S. Blecha, of Baird Holm, L.L.P., for appellant.
John S. Slowiaczek and Virginia A. Albers, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
Appellant, Mary Kay Davis, appeals the district court's order denying her postdissolution motion. The motion requested an order directing her former spouse, Henry A. Davis, to submit to a physical examination so she could obtain a $1 million insurance policy on his life, naming herself as the beneficiary. She alleged that if Henry died, the policy was necessary as security for his substantial alimony and child support obligations. We conclude that Neb. Rev. Stat. § 44-704 (Reissue 2004) prohibited the district court from granting Mary Kay's request absent Henry's consent to her ownership of an insurance policy on his life.

BACKGROUND

PARTIES DISMISS 2001 DISSOLUTION ACTION AND ENTER INTO POSTMARITAL AGREEMENTS
The parties' marriage was dissolved in December 2006. They had two children: a daughter, born in 1991, and son, born in 1994. The parties have significant assets. They agreed to dismiss their 2001 dissolution proceeding after entering into a postmarital agreement, dividing their property for specific occurrences: continuation of the marriage, death, legal separation, or divorce. But in 2002, after Mary Kay sought a declaration that the postmarital agreement was invalid, they signed an amendment to the postmarital agreement (collectively the agreements). In the agreements, Henry promised to transfer property to Mary Kay and she agreed that his business interests would be his separate property.
In paragraph XII of the amendment, Henry agreed that upon the dismissal of all pending litigation, he would execute the Henry A. Davis Irrevocable Trust, which was attached. He also agreed to obtain a life insurance policy with a death benefit of at least $1 million, naming the trust as the beneficiary. The trust was for the benefit of the parties' children. The trust also required the trustee to pay the children's legal guardian up to $5,000 a month for reasonable household expenses, subject to the trustee's sole and absolute discretion. A trust provision stated that Henry had conveyed $10 to it but anticipated conveying additional property.
After these agreements were made, the district court approved them, dismissed Mary Kay's declaratory judgment action with prejudice, and dismissed the parties' 2001 dissolution action without prejudice.

2003 DISSOLUTION ACTION
In 2003, Mary Kay filed a second dissolution action. The district court incorporated the parties' postmarital agreements into its December 2006 decree. Under those agreements, it ordered Henry (1) to pay $5,000 child support a month for both children and $3,000 a month for one child and (2) to pay $12,500 alimony a month for 106 months, to terminate upon either party's death or Mary Kay's remarriage.

MARY KAY MOVES FOR ORDER DIRECTING HENRY TO SUBMIT TO PHYSICAL EXAMINATION FOR INSURANCE POLICY
Later, in March 2007, Mary Kay moved for an order directing Henry to submit to a physical medical examination so she could obtain a life insurance policy on his life. At the hearing, Mary Kay's attorney argued that Henry's child support and alimony obligations exceeded $1.5 million and that a policy on Henry's life would protect her if he died. He further argued that there was no proof that Henry had funded the trust for the children. But Henry's counsel argued that there was a $1 million policy in place and that he had provided proof to Mary Kay during discovery. The record does not show that the policy was offered.
The court stated that security for Henry's support obligations was a matter that could have been anticipated when the parties made the agreements; it overruled the motion.

ASSIGNMENT OF ERROR
Mary Kay assigns as error that the district court erred in refusing to order Henry to submit to a physical examination so she could obtain an insurance policy on his life.

STANDARD OF REVIEW
[1,2] A court has discretion to require reasonable security for an obligor's current or delinquent support obligations when compelling circumstances require it.[1] We will review a district court's postdissolution order regarding security for a support obligation de novo on the record to determine whether the trial court has abused its discretion.[2]
[3,4] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[3] Questions of law and statutory interpretation require us to reach a conclusion independent of the decision made by the court below.[4]

ANALYSIS
Mary Kay contends that she has an insurable interest in Henry's life. She argues that the district court erred in failing to require Henry to secure his support obligations by submitting to a physical examination so she could obtain an insurance policy on his life. In her brief, she contends compelling circumstances justified requiring security because Henry's total support obligations exceeded $1.6 million. At oral argument, however, she contended that she was not required to show compelling circumstances. She claims she is not asking Henry to pay for the insurance coverage or to do anything for security other than to submit to a physical examination.
Initially, we clarify what this case is not about. We are not dealing with a contempt proceeding. Mary Kay is not attempting to enforce the parties' dissolution decree, which incorporated the parties' agreement that Henry would fund the trust for their children through a life insurance policy. Instead of seeking to compel Henry to obtain insurance to fund the trust for their children, Mary Kay is seeking to own a separate policy on Henry's life to secure his support obligations. Thus, we interpret her motion as primarily seeking security for Henry's alimony obligations.
[5] We do not reach the issue of whether Mary Kay has an insurable interest in Henry's life. We assume for this analysis that she does.[5] But an insurable interest does not give her the right to own a policy on Henry's life without his consent. Section 44-704 specifically requires adult insureds to consent to insurance policies on their lives unless they or their spouses are the owners of the policies. Mary Kay is not Henry's spouse, and Henry would not be the owner of the policy.
Section 44-704, in relevant part, provides:
(1) Except as provided in subsection (2) of this section, no policy of insurance shall be issued upon the person of any individual except upon the application of the individual insured or with the written consent of the individual insured. Nothing in this section shall be deemed to prohibit the immediate transfer or assignment of a life insurance policy or annuity contract so issued.
(2) Notwithstanding the provisions of subsection (1) of this section, (a) a husband or wife may effectuate a policy of insurance upon the person of the other . . . .
(3) The term policy of insurance as used in this section shall include any life insurance policy . . . .
(Emphasis supplied.)
In arguing that § 44-704 does not apply, Mary Kay relies on cases in which a district courtas part of a dissolution decree ordered an obligor to maintain a life insurance policy as security for a support obligation. But Mary Kay misses the critical distinction in these cases: The obligor, not the former spouse, was the owner of the policy.[6] These cases fail to support Mary Kay's contention that a district court can compel obligors to consent to their former spouses' owning policies on their lives.
[6] It is the Legislature's function through the enactment of statutes to declare the state's law and public policy.[7] Allowing courts to compel an obligor's consent to a former spouse's ownership of a policy on the obligor's life would violate the Legislature's express policy preference in § 44-704.
The Maryland Court of Appeals addressed this public policy issue in Hopkins v. Hopkins.[8] Before the trial court issued its decree, the wife in Hopkins asked her husband to cooperate in obtaining a $1 million insurance policy on his life to insure her alimony. The court later ordered him to pay her permanent alimony of $4,000 per month, and she was purportedly concerned about his health. She had agreed to pay the premiums and only wanted him to submit to a physical examination for the coverage. When he refused to cooperate, she filed a motion to compel his cooperation. The trial court overruled the motion.
On appeal, the Maryland Court of Appeals agreed that a former spouse has an insurable interest in an indefinite support obligation that terminated upon either party's death. But Maryland had a statute similar to Nebraska's § 44-704 requiring the insured's consent as a predicate to a valid life insurance contract. The court stated that the consent requirement serves two purposes: (1) It prevents wagering on human lives and (2) it protects human lives by removing the temptations and risks associated with other persons' having an interest in both the insured's life and death. "Policies issued in violation of this rule `are not dangerous because they are illegal: they are illegal because they are dangerous."[9] The court noted that for these reasons, courts in states with similar statutes have held that permitting a person to insure the life of another without that person's knowledge or consent is against public policy. It concluded:
A court order requiring the proposed insured to cooperate with the efforts of a party with an insurable interest to obtain a policy of insurance on his life can not [sic] effect the consent contemplated by [the statute]. Cooperating, pursuant to a court order enforceable by contempt, with the appellant's efforts to obtain a policy of insurance on his life, is not the appellee's voluntary act. On the contrary, it is, by its very nature and by definition, coercive.[10]
[7] We agree with this reasoning. We recognize that courts often compel parties in a marital dissolution action to perform acts that would otherwise require their consent. But a court is not free to ignore a legislative requirement of affirmative consent.[11] Aside from the consent issue, and although we do not rely on privacy concerns in our analysis, another court has concluded that a state court order compelling an obligor to comply with a physical examination would violate his right of privacy.[12] We conclude the district court did not err in overruling Mary Kay's motion.

CONCLUSION
We conclude that the district court did not have authority to compel Henry to complete a physical examination so Mary Kay could obtain a life insurance policy on his life, naming herself as the beneficiary. Such an order would have violated this state's public policy of requiring an insured's consent to a policy on his or her life. Although public policy concerns were not the reason the district court overruled Mary Kay's motion to compel Henry to submit to a physical examination, a proper result will not be reversed merely because it was reached for a different reason.[13] The district court's order is affirmed.
AFFIRMED.
NOTES
[1] See, Neb. Rev. Stat. § 42-371(6) (Cum. Supp. 2006); Klinginsmith v. Wichmann, 252 Neb. 889, 567 N.W.2d 172 (1997), citing Lacey v. Lacey, 215 Neb. 162, 337 N.W.2d 740 (1983).
[2] See, Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007); Strunk v. Chromy-Strunk, 270 Neb. 917, 708 N.W.2d 821 (2006); Brockman v. Brockman, 264 Neb. 106, 646 N.W.2d 594 (2002); Klinginsmith, supra note 1; Lacey, supra note 1.
[3] See Schwartz v. Schwartz, 275 Neb. 492, 747 N.W.2d 400 (2008).
[4] Zahl, supra note 2.
[5] See, Neb. Rev. Stat. § 44-103(13)(b) (Reissue 2004); 3 Lee R. Russ & Thomas F. Segalia, Couch on Insurance 3d § 43:2 (2005).
[6] See, Shade v. Kirk, 227 Neb. 775, 420 N.W.2d 284 (1988); Trimble v. Trimble, 218 Neb. 118, 352 N.W.2d 599 (1984).
[7] See Hogelin v. City of Columbus, 274 Neb. 453, 741 N.W.2d 617 (2007).
[8] Hopkins v. Hopkins, 328 Md. 263, 614 A.2d 96 (1992).
[9] Id. at 272, 614 A.2d at 100.
[10] Id. at 275, 614 A.2d at 102.
[11] See, e.g., In re Adoption of Kassandra B. & Nicholas B., 248 Neb. 912, 540 N.W.2d 554 (1995); Douglas County v. Keller, 43 Neb. 635, 62 N.W. 60 (1895). See, also, Metters v. Ralphs Grocery Co., 161 Cal. App. 4th 696, 74 Cal. Rptr. 3d 210 (2008); Grove v. Northeast Ohio Nephrology Assoc., 164 Ohio App. 3d 829, 844 N.E.2d 400 (2005).
[12] Meerwarth v. Meerwarth, 128 N.J. Super. 285, 319 A.2d 779 (1974).
[13] In re Trust Created by Cease, 267 Neb. 753, 677 N.W.2d 495 (2004).