IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
(Memorandum Web Opinion)

STATE V. VAN WINKLE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

GARY E. VAN WINKLE, APPELLANT.

Filed May 26, 2015.    No. A-14-359.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge, on appeal thereto from the County Court for Scotts Bluff County, KRISTEN D. MICKEY, Judge. Judgment of District Court affirmed.

Bell Island, of Island & Huff, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

Gary Van Winkle was convicted and sentenced in the county court for Scotts Bluff County for driving while under the influence. The district court for Scotts Bluff County affirmed his conviction and sentence. On appeal, Van Winkle alleges that the county court erred in failing to sustain his motion to suppress, failing to direct a verdict, improperly instructing the jury, and imposing an excessive sentence. Based on the reasons that follow, we affirm.

### BACKGROUND

On March 16, 2013, at approximately 12:35 a.m., the vehicle driven by Van Winkle was stopped at a vehicle checkpoint in Scottsbluff, Nebraska, set up by the Nebraska State Patrol.

- 1 -

Nebraska State Patrol Trooper Nicholas Goodwin approached the vehicle and asked to see Van Winkle's license, vehicle registration, and proof of insurance. Goodwin testified that Van Winkle had a confused look on his face when he initially asked for these items. Goodwin noted that Van Winkle's eyes were bloodshot and watery and that an odor of alcohol was coming from the vehicle. Goodwin asked Van Winkle if he had been drinking and he denied that he had been.

Goodwin asked Van Winkle to move his vehicle over to the side of the road and exit it, which Van Winkle did. When Van Winkle was outside his vehicle, Goodwin detected the odor of alcohol coming from Van Winkle's person. Goodwin decided to administer field sobriety tests. Before doing so, Goodwin asked Van Winkle if he was on any medications, and Van Winkle responded that he had taken a prescribed muscle relaxer about 12 hours before the stop. Goodwin administered field sobriety tests, and Van Winkle showed impairment while performing the tests. Based on Goodwin's contact with Van Winkle and his performance on the field sobriety tests, Goodwin concluded that Van Winkle was under the influence of alcohol, and placed him under arrest for driving under the influence. A complaint was subsequently filed charging him with driving under the influence of alcoholic liquor or drug over .15, second offense.

Van Winkle filed a motion to suppress, asking the court to suppress "all fruits of the illegal search and seizure, and his subsequent arrest." At the hearing on the motion, the State presented evidence regarding the establishment and administration of the vehicle checkpoint. The plan for setting up the checkpoint in Scottsbluff where Van Winkle was stopped, was prepared by Sergeant Kevin Krzyzanowski of the Nebraska State Patrol. Krzyzanowski presented the plan to Nebraska State Patrol Lieutenant Jamie Balthazor, who as a supervisor had the authority to approve the plan. However, State Patrol policy provides that a supervisor who is going to attend the checkpoint cannot be the supervisor who approves the plan. Balthazor thought he might participate in the checkpoint so he presented the plan to Lieutenant Lance Rogers, who was also a supervisor with the authority to approve the plan. Rogers approved the plan in Balthazor's presence. The written plan for the checkpoint and the State Patrol's policy for checkpoints was entered into evidence.

Krzyzanowski testified that he was the supervisor of the checkpoint, and his main concern as the supervisor was making sure the State Patrol's policies for vehicle checks were followed. He also testified that the checkpoint was operated according to the plan.

The county court denied Van Winkle's motion to suppress. It found that the "limited special purpose checkpoint" was followed, and that there was reasonable and articulable suspicion that Van Winkle had committed or was committing a crime. The court further noted that the testimony showed that the checkpoint was not for general law enforcement purposes, but was a specific limited purpose checkpoint looking for license, registration and insurance, and any traffic violations that would have occurred.

The case proceeded to a jury trial. At the start of trial, Van Winkle renewed his objection to any evidence obtained from the checkpoint. The county court stated that its decision on the motion to suppress would stand, and allowed Van Winkle a continuing objection on the issue.

Goodwin was the only witness to testify at trial. He gave testimony regarding his observations and the events that occurred from the time of his initial contact with Van Winkle until his arrest. At the end of the State's evidence, Van Winkle motioned for a directed verdict on two

issues. First, Van Winkle argued that there had been no evidence of his blood alcohol level and therefore, a directed verdict should be granted on the allegation that his blood alcohol level was "over .15." The State conceded that a directed verdict should be granted on that issue, and the county court granted a directed verdict as to the "over .15" allegation. Second, Van Winkle argued that a directed verdict should be granted on the issue of whether he was driving while under the influence of a drug. The State objected, arguing that there was evidence that Van Winkle had taken a drug, and that was enough to overcome a directed verdict. The trial court agreed with the State and did not sustain Van Winkle's motion for directed verdict on the driving under the influence of a drug issue. Van Winkle rested without presenting any evidence.

At the jury instruction conference, Van Winkle objected to the "under the influence of a drug" language being included in three jury instructions. The county court overruled the objections.

The jury found Van Winkle guilty of driving under the influence. The county court found the prior offense as alleged in the complaint was not valid and sentenced him as a first time offender. The court sentenced him to 30 days in jail and ordered him to pay a $500 fine. Van Winkle appealed to the district court, which affirmed his conviction and sentence.

## ASSIGNMENTS OF ERROR

Van Winkle assigns that the county court erred in (1) failing to sustain his motion to suppress because the checkpoint was constitutionally invalid, (2) admitting hearsay statements at the motion to suppress hearing, (3) failing to direct a verdict on the "under the influence of a drug" part of the charge, (4) improperly instructing the jury on elements not proven at trial, and (5) imposing an excessive sentence.

## STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* But we independently review questions of law in appeals from the county court. *Id.*

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Piper, supra.* Regarding historical facts, we review the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id.*

ANALYSIS

*Motion to Suppress/Constitutionality of Checkpoint.*

Van Winkle first argues that the county court erred in failing to sustain his motion to suppress evidence obtained as a result of the stop because the checkpoint was unconstitutional.

The Nebraska Supreme Court recently held that a checkpoint is constitutional if it is established for a permissible purpose, involves only minimal intrusion, and is not operated according to the unfettered discretion of law enforcement officers. See *State v. Piper, supra.*

Van Winkle contends that the checkpoint was unconstitutional for several reasons. He first argues that the checkpoint subjected motorists to the unfettered discretion of law enforcement officers because the plan for the checkpoint was "not formulated by a person at the policy making level, but by a person involved in the field." Brief for appellant at 11. The State Patrol has a policy which must be followed to avoid unfettered discretion. A section of the policy provides that "A decision to conduct a vehicle check or limited special purpose checkpoint must be made by a neutral source, such as a supervisor who is not involved in conducting the operation in the field." Van Winkle contends that because the plan for the checkpoint was made by Krzyzanowski, an officer in the field who worked at the checkpoint, it was not formulated by a supervisor or someone at the policy making level, thereby violating the policy. Van Winkle cites to *State v. Crom*, 222 Neb. 273, 277, 383 N.W.2d 461, 463 (1986), in which the Court held that a checkpoint subjected motorists to the "unfettered discretion of the officers in the field" and was thus unconstitutional, because "there was no plan formulated at the policymaking level."

In *State v. Piper, supra*, the Nebraska Supreme Court recently addressed what "formulated" means as used in *State v. Crom, supra.* The defendant in *Piper* raised the same issue that Van Winkle raises, i.e. that the plan was not "formulated" at the policymaking level because it was written by a nonsupervisor. The Nebraska Supreme Court concluded that "formulated" for purposes of checkpoints means "approved," and not "conceived" or "created."

In the present case, the evidence shows that Krzyzanowski, a nonsupervisor, came up with the plan for the checkpoint and he sought the approval of the plan from Balthazor, a supervisor. Balthazor thought he may participate in the checkpoint, so he took the plan to Rogers, who was also a supervisor, for approval and he approved it. Accordingly, the plan was "formulated" or approved at the policymaking level.

Further, as the district court found, the State Patrol policy does not prohibit the field officers from having a part in designing the checkpoint. It only requires approval by a supervisor who is not involved in conducting the checkpoint. That is what occurred here. The creation of the plan for the checkpoint and the approval were done in accordance with the State Patrol's policy and did not involve the exercise of unfettered discretion by law enforcement.

Van Winkle next argues that the checkpoint was unconstitutional because the State Patrol violated its policy by allowing the Sheriff's Department to assist in operating the checkpoint. He contends that such violation was an exercise of unfettered discretion by law enforcement officers in the field.

Van Winkle argues that the State Patrol policy "only allows for the assistance of other agencies if they are conducted pursuant to the State Patrol's policy or a comparable policy." Brief

for appellant at 12. He argues there is nothing in the record to show the sheriff's deputies were assisting pursuant to the State Patrol policy or on their own, and there is nothing in the plan assigning any sheriff's deputies to the checkpoint.

The State Patrol's policy states that checkpoints "may be conducted in cooperation with other law enforcement agencies following [the State Patrol's policy] or comparable policies." The only evidence presented at the motion to suppress hearing regarding the assistance of the sheriff's office came during the cross-examination of Goodwin. He was asked if there were sheriff's deputies assisting at the checkpoint and if they were helping make checks and contacting people. Goodwin responded "yes" to both questions.

The State Patrol's policy seems to allow other law enforcement agencies to assist the State Patrol in conducting checkpoints as long as the other agency abides by the State Patrol's policy or a similar policy. It would also permit the State Patrol to assist other agencies if those agencies have the same or similar policy as the State Patrol's policy. Further, as the district court noted, the plan for the checkpoint at issue indicates that outside agencies were contemplated to participate, and a briefing for them was scheduled. We conclude that having the Sheriff's Department assist in operating the checkpoint did not violate the State Patrol's policy.

Van Winkle next contends that the checkpoint was unconstitutional because the State failed to present evidence as to the purpose of the checkpoint and thus, did not prove that the checkpoint was for a permissible purpose. He asserts that the State must prove the checkpoint is of a type that is authorized under the Constitution, and that a checkpoint established for the "general interest in crime control" is invalid, citing *City of Indianapolis v. Edmunds*, 121 S.Ct. 447, 531 U.S. 32, 148 L.Ed. 2d 333 (2000).

The county court found that the evidence showed that the checkpoint was not for general law enforcement purposes, but was a specific limited purpose checkpoint looking for license, registration and insurance, and any traffic violations that would have occurred. We agree. Goodwin testified, on cross-examination, that the checkpoint was a limited scope checkpoint. He stated that the purpose was to check a motorist's license, registration, and proof of insurance, as well as doing a basic check of the vehicle and the people in it. Goodwin's testimony proves that the checkpoint was not established for the "general interest in crime control" but rather, was limited in scope. Its main purpose was verifying motorists' licenses, registrations and proof of insurance, a lawful purpose. We conclude that the purpose of the checkpoint was adequately proven and constitutionally acceptable.

*Hearsay Evidence.*

Van Winkle next argues that the county court erred in admitting hearsay evidence at the motion to suppress hearing. Balthazor testified that he presented the plan for the checkpoint to Rogers and obtained his approval. Rogers did not testify. Van Winkle argues that Balthazor's testimony was hearsay, and should have been excluded. The testimony was allowed over Van Winkle's objection.

Van Winkle did not include the alleged hearsay error in his initial assignments of error filed with the district court. Van Winkle filed supplemental assignments of error two months after he filed his initial assignments of error, but he did not request that he be allowed to file additional

assignments of error, he simply filed it on his own accord. The supplemental assignments of error were titled "assignments of error" and included the four originally assigned errors, plus the newly added assignment of error alleging improper admission of hearsay evidence at the motion to suppress.

The district court concluded Van Winkle's assignment of error regarding alleged hearsay statements at the motion to suppress hearing was not properly presented and it refused to address it. We agree with the district court, and because the district court did not address the issue, we do not address it either.

*Failure to Direct Verdict.*

Van Winkle next assigns that the county court erred in failing to direct a verdict on the issue of whether he was driving under the influence of a drug. The district court agreed, but found that the failure to direct a verdict was harmless error because the evidence as to Van Winkle being under the influence of a drug was "so lacking in probative value that a finding of guilt could not be sustained." We disagree with the district court and conclude that the county court did not err in overruling Van Winkle's motion for directed verdict on the driving under the influence of a drug theory.

Van Winkle was charged with operating or having actual physical control of a motor vehicle while under the influence of alcoholic liquor or while under the influence of a drug. See Neb. Rev. Stat. § 60-6,196(1)(a). The phrase "under the influence of alcoholic liquor or of any drug" means the ingestion of a substance in an amount sufficient to impair to any appreciable degree the driver's ability to operate a motor vehicle in a prudent and cautious manner. *State v. Mitchell*, 19 Neb. App. 801, 820 N.W.2d 75 (2012), reversed on other grounds, *State v. Mitchell*, 285 Neb. 88, 825 N.W.2d 429 (2013).

Van Winkle argues that the State failed to present evidence that he was under the influence of a drug and therefore, the county court should have directed a verdict on that aspect of the charge.

Whether a trial court should have granted a motion for directed verdict at the close of the State's case is a question of law, regarding which an appellate court must reach a conclusion independent of the determination reached by the court below. *State v. Bruna*, 12 Neb. App. 798, 686 N.W.2d 590 (2004).

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

The evidence showed that Van Winkle admitted to having taken a prescription drug, specifically a muscle relaxer, about 12 hours before being stopped. There was also evidence that Van Winkle was impaired at the time he was stopped at the checkpoint, as demonstrated by Goodwin's testimony and the video recording of the field sobriety tests, which was entered into evidence. Accordingly, there was evidence to support a finding that Van Winkle was "under the

influence of any drug," and the issue could not be decided as a matter of law. See *State v. Merchant, supra.*

There was also evidence that Van Winkle had consumed alcohol and was under the influence of alcohol. Goodwin testified that he could smell alcohol emanating from Van Winkle and he concluded that Van Winkle was under the influence of alcohol. Thus, there was evidence to support each theory and it was for the jury to decide what caused his impairment, i.e. whether he was under the influence of drugs, alcohol or both.

Although we conclude that the motion for directed verdict was properly denied by the county court, whereas the district court found that it should have been granted but was harmless error, the outcome remains the same. There was no reversible error in the county court overruling the motion for directed verdict, and the ruling of the district court is affirmed, albeit for a different reason. See *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008) (a proper result will not be reversed merely because it was reached for a different reason).

*Improper Jury Instructions.*

Van Winkle also assigns that the trial court erred in improperly instructing the jury on elements not proven at trial. This assignment of error relates closely to the directed verdict assignment of error because Van Winkle argues that it was error for the jury instructions to include the "under the influence of a drug" language without sufficient evidence to support its inclusion. At the jury instruction conference, Van Winkle objected to the "under the influence of a drug" language in three instructions, and the county court overruled the objections.

The district court concluded that because the motion for directed verdict should have been sustained as to drug influence, it was also error for the county court to give jury instructions on Van Winkle being under the influence of a drug. However, the district court concluded that the error in instructing the jury, just as the error in failing to direct a verdict, was harmless error.

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014).

Whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. *State v. Cortes-Lopez*, 18 Neb. App. 463, 789 N.W.2d 522 (2010). In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Cortes-Lopez, supra.*

Van Winkle argues that the jury instructions given which included the element of "being under the influence of drugs" were improper because there was no evidence to support the instruction. Van Winkle relies on *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997), wherein the Nebraska Supreme Court determined that the trial court erred when it included the word "drugs" in two instructions regarding driving under the influence. The Court determined that the instructions were prejudicial because there was no evidence of the use of drugs by the defendant, and the instructions implied that the defendant was a drug user.

The present case is distinguished from *Adams* because as previously discussed, there was evidence of Van Winkle using a drug. Further, there was no implication that it was illegal for him

to take the drugs he admitted to taking. Thus, the instructions that included "under the influence of a drug" were not prejudicial because there was evidence to support the drug allegation. The county court did not err in including the "under the influence of a drug" language in the jury instructions. The jury was properly instructed on both drugs and alcohol, as there was evidence of ingestion of both and evidence of impairment.

Again, although our reasoning differs from the district court, the outcome remains the same. The ruling of the district court on the jury instruction assignment of error is affirmed, although for a different reason. See *Davis v. Davis, supra.*

*Excessive Sentence.*

Van Winkle's final assignment of error is that the county court imposed an excessive sentence. Van Winkle argues that the county court imposed a harsher sentence than it would have had he not asserted his constitutional right to a jury trial. He contends that a defendant may not receive a more severe sentence because he or she pled not guilty and put the State to the expense of a trial. See *State v. Moore*, 4 Neb. App. 564, 547 N.W.2d 159 (1996).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014). A judicial abuse of discretion exists when the reasons or ruling of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Reyes*, 18 Neb. App. 897, 794 N.W.2d 886 (2011). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.*

Driving under the influence, first offense, is a Class W misdemeanor, punishable by a maximum of 60 days in jail and a $500 fine, with a mandatory minimum of 7 days in jail and a $400 fine. Neb. Rev. Stat. § 28-206(1) (Reissue 2008). Van Winkle was sentenced to 30 days in jail, plus a $500 fine, which is within the statutory limits. Because Van Winkle's sentence is within the statutory limits, it will not be disturbed unless the trial court abused its discretion. See *State v. Berney, supra.*

Van Winkle's argument that the trial court gave him a harsher sentence because he asserted his right to a jury trial is based on a statement made by the county court at sentencing: "This is a case that was a serious case in the sense that it went through the process of a jury trial, a jury of your peers found you guilty of the offense of driving under the influence, and as I recall, in relatively short order following the evidence being presented at trial." Van Winkle argues that the

court's statement shows the court's displeasure with Van Winkle exercising his right to trial and then being found guilty. He contends that since it is improper to punish a person for going to trial, the court's sentence was an abuse of discretion.

However, when the court's statement is considered in context with preceding statements, it is clear that Van Winkle misinterprets the court's comment. Prior to making the statement that Van Winkle relies on, the court stated that it had reviewed Van Winkle's prior record and noted that it included an offense of the same nature. Subsequent to the statement at issue, the court commented that driving under the influence deserves serious attention because it jeopardizes the safety and welfare of everyone else on the roads. The court then stated that under the circumstances, it did not find that this was an appropriate case for a probation sentence.

The district court found:

> The [county court] appears to be commenting on the fact that [Van Winkle's] guilt was clearly established by the trial process, and the jury must have found the evidence convincing because they did not need much time to find him guilty. By the [county court's] comments, [the court] was particularly concerned with [Van Winkle's] record of similar conduct, and found probation would depreciate the seriousness of the nature of the offense and promote disrespect for the law.

We agree with the district court and conclude that the record shows that the county court did not punish Van Winkle for exercising his right to trial. Because Van Winkle's sentence is within the statutory limits and the county court did not abuse its discretion in sentencing him, his excessive sentence assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order which affirmed the county court's judgment of conviction and sentence.

AFFIRMED.