KAELYNN KIMMINAU AND WAYNE KIMMINAU,
WIFE AND HUSBAND, APPELLANTS, V. CITY
OF HASTINGS, A NEBRASKA POLITICAL
SUBDIVISION, ET AL., APPELLEES.

___ N.W.2d ___

Filed June 19, 2015.    No. S-14-413.

1. **Judgments: Statutes: Appeal and Error.** Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.

2. **Political Subdivisions Tort Claims Act.** Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the Political Subdivisions Tort Claims Act is a question of law.

3. **Political Subdivisions Tort Claims Act: Appeal and Error.** An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the Political Subdivisions Tort Claims Act independent from the conclusion reached by the trial court.

4. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

5. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

6. **____: ____.** When cross-motions for summary judgment have been ruled upon by the district court, the appellate court may determine the controversy that is the subject of those motions or may make an order specifying the facts that appear without substantial controversy and direct such further proceedings as it deems just.

7. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** The Political Subdivisions Tort Claims Act provides limited waivers of sovereign immunity which are subject to statutory exceptions.

8. **Political Subdivisions Tort Claims Act: Tort Claims Act.** Where language in the Political Subdivisions Tort Claims Act is similar to language in the State Tort Claims Act, cases construing one statute are applicable to construction of the other.

9. ____: ____. The purpose of the discretionary function exception of the Political Subdivisions Tort Claims Act or the State Tort Claims Act is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

10. ____: ____. The discretionary function exception of the Political Subdivisions Tort Claims Act or the State Tort Claims Act extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions. The exception does not extend to the exercise of discretionary acts at an operational level.

11. ____: ____. A court engages in a two-step analysis to determine whether the discretionary function exception of the Political Subdivisions Tort Claims Act or the State Tort Claims Act applies. First, the court must consider whether the action is a matter of choice for the acting employee. If the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.

12. **Negligence: Damages: Proximate Cause.** In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused.

13. **Negligence.** The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty.

14. **Negligence: Words and Phrases.** A "duty" is an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another. If there is no duty owed, there can be no negligence.

15. **Negligence.** The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

16. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court resolves the question independently of the conclusion reached by the trial court.

17. **Negligence: Liability: Public Policy.** An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm. But, in exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that a defendant has no duty or that the ordinary duty of reasonable care requires modification.

18. **Judgments: Negligence: Liability: Public Policy.** A no-duty determination is grounded in public policy and based upon legislative facts, not adjudicative facts arising out of the particular circumstances of the case. And such ruling should be explained and justified based on articulated policies or principles that justify exempting these actors from liability or modifying the ordinary duty of reasonable care.

Appeal from the District Court for Adams County: TERRI S. HARDER, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Douglas G. Pauley and Scott D. Pauley, of Conway, Pauley & Johnson, P.C., and Jefferson Downing, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellants.

Stephen L. Ahl and Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellees R Lazy K Trucking, Inc., and Wayne Todd.

Gail S. Perry and Robert B. Seybert, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee City of Hastings.

Vincent Valentino and Brandy Johnson for appellee County of Adams.

Stephen G. Olson, Robert S. Keith, and Kristina J. Kamler, of Engles, Ketcham, Olson & Keith, P.C., for appellee Hastings Rural Fire District.

HEAVICAN, C.J., WRIGHT, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

STEPHAN, J.

Kaelynn Kimminau and her husband, Wayne Kimminau, brought this action seeking damages for personal injuries

Kaelynn suffered as the result of a motor vehicle accident in rural Adams County, Nebraska, in November 2009. They alleged that Kaelynn lost control of her vehicle due to corn mash which had spilled from a truck onto the highway the previous day. The action was brought against Wayne Todd, the driver of the truck, and R Lazy K Trucking, Inc. (R Lazy K), Todd's employer. Also named as defendants, pursuant to the Political Subdivisions Tort Claims Act (PSTCA),[1] were the City of Hastings, Hastings Rural Fire District (Hastings Rural), and the County of Adams. The district court for Adams County entered summary judgment in favor of all named defendants.

The Kimminaus perfected this timely appeal, and we granted a petition to bypass. We reverse the judgment of the district court in favor of the political subdivisions and affirm the judgment in favor of Todd and R Lazy K.

## BACKGROUND

### Undisputed Facts

The following facts are uncontroverted: The City of Hastings, Adams County, and Hastings Rural are political subdivisions as defined by Nebraska law. Pursuant to an emergency service agreement, the Hastings Fire Department (Hastings Fire) and Hastings Rural keep fire equipment in facilities owned by Hastings Fire. Hastings Fire will also respond to emergency calls with Hastings Rural within the latter's response district, which generally includes those areas of Adams County not within the Hastings city limits. Hastings Rural is comprised of an all-volunteer force.

On November 15, 2009, Nebraska State Trooper Monte Dart was completing a traffic stop on South Showboat Boulevard in rural Adams County when he observed wet corn mash spilling onto the roadway from a truck owned by R Lazy K and operated by Todd. The corn mash, which has the consistency

---

[1] Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012).

of tapioca pudding and is sometimes referred to as "wet cake" or "wet distiller's grain," is a byproduct of ethanol production that is fed to cattle.

Dart closed the southbound lane of the roadway and requested assistance. South Showboat Boulevard is a two-lane paved roadway with solid white lines delineating the edge of each lane. It has an unpaved shoulder, approximately 5 to 8 feet wide, leading to a ditch on either side of the roadway.

Hastings Fire and Hastings Rural responded to the scene of the spill at approximately 12:20 p.m. They moved the spilled corn mash from the traveled portion of the roadway onto the unpaved shoulder and into the ditch, utilizing shovels, brooms, and firehoses. Neither Todd nor R Lazy K were requested to assist with the cleanup of the spill, and neither did so.

These events were visually and audibly recorded by a front dash-mounted camera in Dart's patrol vehicle. On the recording, corn mash is visible on the shoulder of the roadway just past the white line at the edge of the southbound lane of the roadway after the cleanup was completed. When the cleanup was concluded, Dart issued a traffic citation to Todd, inspected the roadway, and then reopened it to vehicular traffic, because he thought it was safe to do so. Later that evening, the Adams County highway superintendent and a volunteer captain with Hastings Rural separately drove past the site of the corn mash spill and observed that the paved road surface was clear of any corn mash debris.

On the following day, November 16, 2009, at approximately 1:20 p.m., Kaelynn was driving southbound on South Showboat Boulevard. At the site of the corn mash spill, she lost control of her vehicle. The vehicle swerved on the roadway and eventually came to rest against a utility pole in the ditch. A photograph of the accident scene shows corn mash on the surface of the southbound lane of South Showboat Boulevard, north of where Kaelynn's vehicle came to rest. Kaelynn was not aware of corn mash on the roadway until her

vehicle came in contact with it. A motorist who was traveling behind Kaelynn prior to the accident saw her vehicle drop a tire off the roadway onto the unpaved shoulder and encounter corn mash immediately prior to its swerving.

At approximately 1:26 p.m. on November 16, 2009, an unidentified truckdriver contacted the joint dispatch center in Hastings to report Kaelynn's accident. The joint dispatch center serves as the exclusive dispatch center for the Hastings Police Department, the Adams County Sheriff's Department, and all of the fire departments in Adams County. From the completion of the cleanup on November 15 until the report of Kaelynn's accident at 1:26 p.m. on November 16, the dispatch center received no calls or messages regarding any corn mash spills on South Showboat Boulevard. Likewise, Hastings Rural was not notified of any other incidences of corn mash on the paved portion of the roadway on South Showboat Boulevard following the cleanup on November 15 until it was informed of Kaelynn's accident at 1:29 p.m. on November 16.

Procedural Background

In their operative amended complaint, the Kimminaus alleged that the three political subdivisions had actual or constructive notice of the corn mash spill and were negligent in (1) failing to take or to direct others to take corrective action and (2) failing to warn motorists of the danger posed by the spill. The Kimminaus further alleged that Todd was negligent in causing the spill, failing to take reasonable steps to remove the corn mash from the roadway, and failing to warn motorists of the danger. They alleged that R Lazy K was negligent in hiring and failing to adequately supervise Todd and in failing to take reasonable steps to remove the spilled corn mash from the roadway and warn motorists of the danger.

The three political subdivisions asserted various affirmative defenses, including sovereign immunity under § 13-910. Todd and R Lazy K denied that they were negligent and

alleged that Kaelynn's negligence was the proximate cause of the accident.

The political subdivisions filed motions for summary judgment, which were sustained by the district court. The court determined as a matter of law that the political subdivisions were immune from suit under § 13-910(12), reasoning that "the migration of the corn mash onto the roadway (after being cleaned up) was a 'spot or localized defect' as described in § 13-910" of which the political subdivisions did not have actual or constructive notice.

Subsequently, the district court entered a separate order denying the Kimminaus' motion for summary judgment with respect to Todd and R Lazy K and sustaining the cross-motions for summary judgment filed by those parties. The court reasoned that the actions of the firefighters and the state trooper in supervising, conducting the cleanup of the corn mash spill, and declaring the road safe for travel cut off any duty on the part of Todd and R Lazy K to remediate the spill. The court concluded that it was "unwilling to create such a duty in light of the potential far-reaching applications that defy logic and common sense."

## ASSIGNMENTS OF ERROR

The Kimminaus assign, restated, that the district court erred when it (1) found the political subdivisions were immune from liability under § 13-910(12); (2) granted the political subdivisions' motions for summary judgment, because a question of material fact existed regarding whether they exercised reasonable care in remediating the spill; (3) granted summary judgment, because an issue of material fact exists as to whether Kaelynn first encountered the wet corn mash on the paved roadway or the shoulder; (4) found any duty owed by Todd and R Lazy K was extinguished as a matter of law when Dart deemed the highway reasonably safe for travel after the cleanup, because this is a question of fact; and (5) erred in not granting the Kimminaus' motion for summary judgment on the issue of the liability of Todd and R Lazy K.

## STANDARD OF REVIEW

[1] Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.[2]

[2,3] Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the PSTCA is a question of law.[3] An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the PSTCA independent from the conclusion reached by the trial court.[4]

[4,5] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[5]

[6] When cross-motions for summary judgment have been ruled upon by the district court, the appellate court may determine the controversy that is the subject of those motions or may make an order specifying the facts that appear without substantial controversy and direct such further proceedings as it deems just.[6]

---

[2] *Frederick v. City of Falls City*, 289 Neb. 864, 857 N.W.2d 569 (2015); *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008).

[3] *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015). See, also, *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014).

[4] *Id.*

[5] *City of Omaha v. City of Elkhorn*, 276 Neb. 70, 752 N.W.2d 137 (2008); *Hofferber v. City of Hastings*, 275 Neb. 503, 747 N.W.2d 389 (2008).

[6] *Loves v. World Ins. Co.*, 276 Neb. 936, 758 N.W.2d 640 (2008); *Builders Supply Co. v. Czerwinski*, 275 Neb. 622, 748 N.W.2d 645 (2008).

## ANALYSIS

### Political Subdivisions

[7] The sole issue on appeal with respect to the three political subdivisions is whether they are immune from suit under the doctrine of sovereign immunity. The PSTCA provides limited waivers of sovereign immunity which are subject to statutory exceptions.[7] Section 13-910(12), one of those exceptions, provides in pertinent part that the PSTCA shall not apply to the following:

> Any claim arising out of the alleged insufficiency or want of repair of any highway as defined in such section, bridge, or other public thoroughfare. Insufficiency or want of repair shall be construed to refer to the general or overall condition and shall not refer to a spot or localized defect. A political subdivision shall be deemed to waive its immunity for a claim due to a spot or localized defect only if (a) the political subdivision has had actual or constructive notice of the defect within a reasonable time to allow repair prior to the incident giving rise to the claim . . . .

We have not previously construed the phrase "spot or localized defect" as it is used in this statute. Generally, a "defect" is defined as "[a]n imperfection or shortcoming, esp. in a part that is essential to the operation or safety of a product."[8] "Spot" is defined as "a small area visibly different . . . from the surrounding area."[9] "Localize" is defined as "to accumulate in or be restricted to a specific or limited area."[10]

---

[7] *Stick v. City of Omaha, supra* note 3; *Hall v. County of Lancaster, supra* note 3.

[8] Black's Law Dictionary 507 (10th ed. 2014).

[9] Merriam-Webster's Collegiate Dictionary 1134 (10th ed. 2001).

[10] *Id*. at 682.

[8] In *Woollen v. State*,[11] we determined that ruts of three-fourths of an inch or greater depth in an asphalt surfaced road constituted a "spot or localized defect" within the meaning of a corresponding provision of the State Tort Claims Act,[12] because the ruts constituted an "unacceptable safety risk."[13] And, we have held that where language in the PSTCA is similar to language in the State Tort Claims Act, cases construing one statute are applicable to construction of the other.[14]

The parties generally agree that the spilled corn mash on South Showboat Boulevard constituted a spot or localized defect. But the political subdivisions argue that there were actually two separate events: the first on November 15, 2009, when the corn mash spilled onto the roadway and was removed from the paved surface by Hastings Fire and Hastings Rural, and the second, when the corn mash "migrated" from the shoulder of the roadway back onto the paved surface. They contend that because they had no actual or constructive notice of the second event, their sovereign immunity under § 13-910(12) was not waived. On the other hand, the Kimminaus contend that there was a single spot or localized defect created by the corn mash spill on November 15, as to which all three political subdivisions had actual notice, resulting in a waiver of their sovereign immunity. Further, they contend that the presence of the corn mash on the roadway at the time of the accident was not a new "defect," but, rather, was the result of a negligent response by the political subdivisions to the original spill.

In resolving this issue, we assume that Kaelynn's accident occurred when she lost control of her vehicle due to

---

[11] *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999), *abrogated on other grounds, A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

[12] See Neb. Rev. Stat. § 81-8,219(12) (Reissue 2014).

[13] *Woollen v. State, supra* note 11, 256 Neb. at 878, 593 N.W.2d at 739.

[14] See, e.g., *Hall v. County of Lancaster, supra* note 3; *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

the presence of corn mash on the southbound lane of South Showboat Boulevard. We also note the uncontroverted evidence that the spilled corn mash was moved from the paved surface of the roadway to the adjacent shoulder and ditch following the spill on November 15, 2009, but was present on the southbound lane on the following day. The record does not disclose how or precisely when the corn mash "migrated" from the shoulder to the paved roadway surface.

We conclude that there was only one "spot or localized defect" on South Showboat Boulevard: the corn mash which spilled from the truck driven by Todd on November 15, 2009. There is no reasonable basis to infer that the corn mash on the roadway on the following day originated from any other source. And the fact that the corn mash was removed from the traveled portion of the highway following the spill cannot be viewed as an elimination of the defect, because of the uncontroverted fact that corn mash remained on the shoulder of the road following the initial cleanup. Under Nebraska statutes pertaining generally to highways, "[s]houlder means that *part of the highway* contiguous to the roadway and designed for the accommodation of stopped vehicles, for emergency use, and for lateral support of the base and surface courses of the roadway."[15] Our cases recognize that a political subdivision's responsibility to maintain a highway in a reasonably safe condition for travel is not limited to the traveled portions of the highway, but may extend to dangerous conditions existing on a shoulder or other adjacent structures.[16] Because corn mash remained on the shoulder of the road after the initial cleanup, its subsequent "migration" onto the southbound lane was not a new and distinct defect, but, rather, a sequela of the original spill which constituted a single defect.

---

[15] Neb. Rev. Stat. § 39-101(12) (Reissue 2008) (emphasis supplied).

[16] See, e.g., *Richardson & Gillispie v. State*, 200 Neb. 225, 263 N.W.2d 442 (1978), *modified on denial of rehearing* 200 Neb. 781, 265 N.W.2d 457; *King v. Douglas County*, 114 Neb. 477, 208 N.W. 120 (1926).

Section § 13-910(12) immunizes political subdivisions from liability claims relating to spot or localized defects in highways, bridges, or other public thoroughfares unless and until they have notice of the defect and a reasonable time to repair it. When the requisite notice exists, sovereign immunity is waived. That occurred here when Hastings Fire and Hastings Rural responded to the spill on November 15, 2009, and the Adams County highway superintendent was informed of it later that same day. We do not read § 13-910(12) as providing immunity to a political subdivision with respect to a claim alleging that it took inadequate measures to repair a spot or localized defect of which it had notice.

[9,10] We are also not persuaded by Adams County's argument that § 13-910(2) provides an alternative source of immunity. Section 13-910(2) provides that the PTSCA shall not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused." The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.[17] The discretionary function exception extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions. The exception does not extend to the exercise of discretionary acts at an operational level.[18] Examples of discretionary functions include the initiation of programs and activities, establishment of plans and schedules, and judgmental decisions within a broad regulatory framework lacking specific standards.[19]

---

[17] *Shipley v. Department of Roads, supra* note 14; *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007).

[18] *Id.*

[19] *Doe v. Omaha Pub. Sch. Dist., supra* note 17; *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000).

[11] A court engages in a two-step analysis to determine whether the discretionary function exception of the PSTCA applies.[20] First, the court must consider whether the action is a matter of choice for the acting employee.[21] If the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.[22] We have held that the placement of pavement markings[23] and traffic signs[24] is a discretionary function where there is no specific statutory or other legal requirement governing such placement.

Maintenance of roads and highways is not a matter of choice. Neb. Rev. Stat. § 39-2003 (Reissue 2008) provides that "[a]ll county roads . . . shall be maintained at the expense of the county." Maintenance is defined as

the act, operation, or continuous process of repair, reconstruction, or preservation of the whole or any part of any highway, including surface, shoulders, roadsides, traffic control devices, structures, waterways, and drainage facilities, for the purpose of keeping it at or near or improving upon its original standard of usefulness and safety.[25]

In *Maresh v. State*,[26] we held that discretionary function immunity under the State Tort Claims Act did not apply to a claim that the State was negligent in failing to warn of a dropoff at the edge of a state highway. We reasoned in part that failure to warn of a dangerous condition was "akin to maintenance,

---

[20] *Shipley v. Department of Roads, supra* note 14; *Doe v. Omaha Pub. Sch. Dist., supra* note 17.

[21] *Id.*

[22] *Id.*

[23] *Blaser v. County of Madison*, 288 Neb. 306, 847 N.W.2d 293 (2014).

[24] *Shipley v. Department of Roads, supra* note 14.

[25] § 39-101(6).

[26] *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992) (superseded by statute on other grounds as stated in *Walton v. Patil*, 279 Neb. 974, 783 N.W.2d 438 (2010)).

where decisions are made at the operational level without policy implications," and therefore was not a discretionary function.[27]

Similarly, we conclude here that actions taken by a county in response to a reported spot or localized defect on a roadway are not policy decisions, but, rather, are ministerial acts at the operational level pursuant to the county's statutory duty to maintain its roads. A contrary conclusion would negate the provision of § 13-910(12) that sovereign immunity for a claim due to a spot or localized defect is waived if the political subdivision has notice of the defect within a reasonable time to allow repair.

In summary, we conclude that the corn mash spill on November 15, 2009, was a singular spot or localized defect on South Showboat Boulevard which was still in existence at the time of Kaelynn's accident on the following day. All three political subdivisions had actual notice of the defect within a sufficient time to allow repair, and their sovereign immunity was therefore waived pursuant to § 13-910(12). We conclude the district court erred in granting summary judgment to the political subdivisions on the basis of sovereign immunity. We emphasize that this disposition focuses solely on the issue of sovereign immunity. We do not comment on the merits of the Kimminaus' claims against the political subdivisions, including questions with respect to duty, as those issues have not yet been addressed by the district court.

## Todd and R Lazy K

The Kimminaus contend that the district court erred in concluding that any duty that Todd and R Lazy K had to remediate the corn mash spill was cut off by the actions of Hastings Fire and Hastings Rural in supervising and conducting the cleanup on November 15, 2009, and by the determination of Dart that the road was safe for travel after that cleanup was

---

[27] *Id.* at 518, 489 N.W.2d at 314.

concluded. They rely principally on *Simonsen v. Thorin*[28] and *Brown v. Nebraska P.P. Dist.*,[29] in which this court addressed the duty owed by one who causes an obstruction to be placed on a public roadway. In *Simonsen*, we held that a truckdriver who, without negligence, hit and knocked a trolley pole into a street had a "positive, continuing duty to the public traveling the street to warn of [the] danger."[30] In *Brown,* we held that a public utility whose employees caused smoke to drift across a public road and allegedly caused a motor vehicle accident could bear liability to an injured motorist on the theory that it had placed a dangerous obstruction on the highway and failed to use ordinary care to prevent injury. But neither of these cases involved the circumstances presented here, where a public authority took action to remove the obstruction and then declared the road safe for travel.

[12-16] In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused.[31] Thus, the threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty.[32] A "duty" is an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another.[33] If there is no duty owed, there can be no negligence.[34] The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.[35] When reviewing a question

---

[28] *Simonsen v. Thorin*, 120 Neb. 684, 234 N.W. 628 (1931).

[29] *Brown v. Nebraska P.P. Dist.*, 209 Neb. 61, 306 N.W.2d 167 (1981).

[30] *Simonsen v. Thorin, supra* note 28, 120 Neb. at 687, 234 N.W. at 629.

[31] *Durre v. Wilkinson Development*, 285 Neb. 880, 830 N.W.2d 72 (2013); *Olson v. Wrenshall*, 284 Neb. 445, 822 N.W.2d 336 (2012).

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

of law, an appellate court resolves the question independently of the conclusion reached by the trial court.[36]

[17,18] Under § 7 of the Restatement (Third) of Torts[37] which we adopted in *A.W. v. Lancaster Cty. Sch. Dist. 0001*,[38] an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.[39] But, in exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that a defendant has no duty or that the ordinary duty of reasonable care requires modification.[40] A no-duty determination, then, is grounded in public policy and based upon legislative facts, not adjudicative facts arising out of the particular circumstances of the case.[41] And such ruling should be explained and justified based on articulated policies or principles that justify exempting these actors from liability or modifying the ordinary duty of reasonable care.[42]

Here, the district court essentially determined that it would be poor public policy to recognize a duty on the part of a motorist who creates an obstruction on a roadway to take further action with respect to the obstruction after public authorities have removed it to their satisfaction and declared the roadway safe for vehicular travel. We agree. Generally, public authorities are in a better position than an average motorist to determine when an obstruction has been sufficiently removed from a roadway to make it safe for travel, particularly when such authorities take control of the scene and actively engage

---

[36] *Id.*

[37] 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010).

[38] *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 11.

[39] *Id.*, citing 1 Restatement, *supra* note 37, § 7(a).

[40] *Id.*, citing 1 Restatement, *supra* note 37, § 7(b).

[41] *Id.*, citing 1 Restatement, *supra* note 37, § 7, comment *b*.

[42] *Id.*, citing 1 Restatement, *supra* note 37, § 7, comment *j*.

in removing the obstruction. It is not reasonable to expect a motorist in that circumstance to second-guess the judgment of the public authorities regarding the efficacy of their actions and the safety of the roadway. The district court correctly determined that the actions of the firefighters who responded to the spill and Dart, the state trooper who opened the road for traffic, cut off any duty that Todd and R Lazy K had to remediate the spill or warn of the hazard it posed to other motorists. Accordingly, the district court did not err in denying the Kimminaus' motion for summary judgment with respect to their claims against Todd and R Lazy K or in granting those parties' cross-motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court with respect to Todd and R Lazy K. But we reverse the judgment of the district court in favor of the City of Hastings, Adams County, and Hastings Rural, and remand the cause to the district court for further proceedings with respect to those parties.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

CONNOLLY, J., not participating.